402 So.2d 316 (1981)
James Calvin GATOR
v.
STATE of Mississippi.
No. 52612.
Supreme Court of Mississippi.
April 8, 1981.
As Modified on Denial of Rehearing April 29, 1981.
William K. Duke, Richard C. Davis, Oxford, for appellant.
Bill Allain, Atty. Gen. by Mark A. Chinn, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROBERTSON, P.J., and BROOM and HAWKINS, JJ.
ROBERTSON, Presiding Justice, for the Court:
James Calvin Gator was indicted, tried and convicted in the Circuit Court of Lafayette County for the rape of a 58-year-old widow. The jury was unable to agree on punishment, whereupon, the trial court sentenced Gator to serve 23 years in an institution designated by the Mississippi Department of Corrections.
Around 10:30 p.m. on October 10, 1978, the prosecutrix, a 58-year-old widow, was awakened by a light in her bedroom. She heard a noise, and turned on a lamp by her bed. After checking the living room and kitchen doors, which were locked, she checked the drapes which were still drawn on the patio sliding door. When she pulled the drapes, she saw a face in the glass door, which was not completely closed. She attempted to close the sliding door but the man outside grabbed her wrist. As she struggled with her assailant, he entered the house and grabbed her by both wrists. After he had pulled her out on the patio, he threw her on the ground and raped her.
He then jerked her to her feet and ordered her back in the house. He told her that he had done a terrible thing, and that he had come there primarily looking for money. She offered him $20 if he would leave, and after she handed him the money she slammed the door and called the police. She was unable to give a description of her assailant other than that he was a black man of about medium build.
About a month and 20 days later, defendant was picked up after midnight on November 29, 1978, for investigation in connection with a series of burglaries. He was transported to the police station and advised *317 of his Miranda rights. After defendant Gator stated that he understood his rights, he signed a printed waiver of rights form in the presence of Detective Captain David Webb and Lieutenant Metts. He then made a statement, reduced to writing by Captain Webb, admitting the rape of the prosecutrix. Gator signed the statement and Webb and Metts signed as witnesses.
At the preliminary hearing, on defendant's motion to suppress, Gator testified, denying that he had raped the prosecutrix or that he had made any statement about the rape. However, he admitted making statements about the burglaries. He admitted that he was not threatened or pressured on the burglary statements. The court overruled the motion to suppress the confession.
Dr. John W. Hunsicker, a young clinical psychologist, testified, at the pre-trial hearing to determine defendant's competency to stand trial, that he had given Gator psychological and personality tests a few days before, that the tests indicated an IQ of 43, and a mental age of 7 years and 2 months. Dr. Hunsicker was unable to testify that Gator had been overreached in making his confession, nor did he have an opinion as to whether Gator knew the difference between right and wrong. The court found that defendant was competent to stand trial. After a full trial, the defendant was convicted and sentenced as aforesaid.
The defendant has assigned 11 errors allegedly committed by the trial court. Most of them have to do with the feeblemindedness of the defendant, and the bearing this would have on his competency to stand trial, or to intelligently waive his rights and make a voluntary confession. The defendant's position seems to be that an IQ of 43, per se, conclusively proves that the defendant, although an experienced 41-year-old man, was not capable of forming a criminal intent to commit rape, was incapable of distinguishing between right and wrong, and was incapable of aiding his two court-appointed attorneys in preparing his defense.
At the trial, Dr. Hunsicker testified as to the psychological tests given Gator and as to his mental and social ages, but he could not state whether defendant was capable of forming a criminal intent, nor could he state whether the defendant knew the difference between right and wrong.
Dr. Donald C. Guild, director of forensic psychiatry at Mississippi State Hospital at Whitfield, testified that he, in conjunction with Dr. Stanley, the staff psychologist, had examined the defendant, after they had reviewed the defendant's history. Dr. Guild testified that he looked primarily at two things: (1) is he competent to stand trial; and (2) is he criminally responsible? Dr. Guild's opinion was that he was competent to stand trial, that he knew the difference between right and wrong, and that he knew the nature and quality of his wrongful act and was, therefore, criminally responsible. Dr. Guild explained that an IQ of 43 arrived at through the Stanford  Benet test would not be conclusive as to the real intelligence of a person, that an IQ test can be influenced to a considerable extent by motivation, that most IQ tests contain a social comprehension scale, that an IQ of 43 would be the very bottom reading, and that in his opinion, although Whitfield did not give defendant Gator any psychological tests, his considered opinion, after interviewing and observing defendant and after studying his history, would be that the defendant had an IQ of 70.
The trial of this case took two full days. The record consists of 410 pages, contained in two volumes. The trial judge, in ruling on a motion for a new trial, said, among other things:
"This defendant was indicted by a grand jury of Lafayette County on the 4th day of January, 1979, on the crime of rape. During the January, 1979, term of court and particularly on January 9th, 1979, a motion for psychiatric examination was filed, no jury trial was asked for to determine whether or not the defendant was capable of assisting his lawyers in his defense. After the court had heard the matter without a jury, the court entered *318 an order that the defendant would be examined by a psychiatrist at Whitfield, Mississippi, Mississippi State Hospital. He was finally examined by them. Of course, I am sure the Supreme Court is aware of the problems that the trial courts are having in getting people committed to Whitfield for such examination. After this examination, of course, the psychiatrist at Whitfield says he was capable of communicating, capable of knowing right from wrong, in other words, he met the McNaghton test that is still used by the State Supreme Court. Some time later in the fall of the year, he was examined by a clinical psychologist which the court authorized and upon the trial of the case when the matter involving the motion to suppress confession was heard, the trial court saw and observed the defendant, heard him testify in his own behalf, observed him in the courtroom and heard the other evidence that was presented. The trial judge determined that he was capable of understanding and knowing and appreciating his situation that he was in which he did make a confession and then after he made the confession, he went in the automobile with the officers and pointed out the house where the lady lives. Now it's urged upon this court that due to the facts that the clinical psychologist testified, that this defendant had an IQ of some 43, that as a matter of law, he is incapable of being able to give a confession or incapable of assisting in a rational defense. This court is of the opinion that when the legislature placed feeblemindedness in the same statute as that of insanity, it put the ultimate question to the jury and not to that of the trial judge concerning a person's feeblemindedness, and if I recall correctly, at the arraignment of this defendant, he entered pleas of not guilty by reason of insanity and feeblemindedness, and therefore this court is of the opinion the whole issue to be finally determined is a question of fact for the jury and certainly not a question of law since the same statute now embraces both insanity and feeblemindedness... . The mere fact that the legislature has seen fit to put that [feeblemindedness] under the same statute as that of insanity, this court is of the opinion that he should be tried the same as the issue of insanity and under the same rules and regulations of insanity and the state psychiatrist having testified that although he did not test this man from his interview, talking with him, seeing him, and his diagnosis was that his IQ would be in the range of the 70's, from his long experience working in this field so there was the issue of fact as to what the clinical psychologist testified to and that of the psychiatrist to be resolved by the jury and the whole issue was put to the jury. On the matter of restricting the clinical psychologist in his testimony on the stand concerning many and varied tests that he performed, he testified specifically to the two he said that was the most important, and then after having testified as to this, he would not, even upon the court's question to him, formulate an opinion as to whether or not this defendant was capable of knowing right from wrong. He said he was not qualified to answer that. So having answered that in that manner, the court was of the opinion that and his other testimony he was not going to give an opinion. He was about in the same position as any lay witness not having any facts to back upon and would not render an opinion. His testimony was really of very little value to the court in the trial of the case or to the jury. For those reasons the court will overrule the motion for a new trial, and the judgment notwithstanding the verdict.
MR. DUKE: If it please the court, as a point of clarification, is the court holding that the matter of whether or not the confession itself should have been admitted in evidence was cured by the jury?
THE COURT: No sir, I am not holding that. I am holding that on the basis of the evidence I stated while ago, on the basis of the evidence presented to the court, the court's observation of the defendant *319 in the courtroom the defendant taking the stand and testifying, this court was of the opinion that he did have sufficient understanding and ability to make a confession which the court ruled on in the trial of the case."
(Emphasis added).
We agree with the trial judge that the defendant was capable of understanding his Miranda rights, and, after having these rights explained to him, that he intelligently, knowingly and voluntarily waived these rights and confessed that he committed the offense with which he was charged.
With defendant's confession and Dr. Guild's testimony that defendant was criminally responsible, before them, the evidence was such that the jury could reasonably have found the defendant guilty beyond a reasonable doubt.
One other assignment of error that should be mentioned was that the court erred in not dismissing the charge because the trial took place 385 days after the indictment. The indictment was filed January 4, 1979. The order appointing two attorneys to represent the defendant was dated January 8, 1979, and a motion for psychiatric examination was made by defense counsel on January 9, 1979. The court, after a detailed hearing on January 17, 1979, properly sustained the motion for psychiatric examination. That psychiatric examination was completed at Whitfield on November 6, 1979, at which time defendant was certified as competent to stand trial. A motion to dismiss because defendant had not been speedily tried was filed on January 17, 1980. The record reflects that it was not until the case was called for trial on January 24, 1980, that defendant was arraigned and pled "not guilty". After overruling the motion to dismiss, the court proceeding with a full trial on January 24 and 25, 1980. Most of the delay between the date of the indictment and the date of trial was because of the difficulty in getting a psychiatric examination at Whitfield. The motion for psychiatric examination at Whitfield was made by defendant, and no motion for a private examination was ever made.
Mississippi Code Annotated section 99-17-1 (Supp. 1980) provides:
"Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."
(Emphasis added).
Admittedly the defendant was not arraigned until January 24, 1980. There is no merit in this assignment of error.
We have carefully considered and studied the other assignments of error and find them to be without merit.
The conviction and sentence are, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.