666 So.2d 767 (1995)
West COLE
v.
STATE of Mississippi.
No. 94-DP-00217-SCT.
Supreme Court of Mississippi.
November 30, 1995.
*772 James W. Craig, Phelps Dunbar, Jackson, for appellant.
Michael C. Moore, Attorney General, Marvin L. White, Jr., Assistant Attorney General, Jackson, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
This is an appeal from the denial of an evidentiary hearing by the Hinds County Circuit Court on West Cole's Application for Leave to File Motion to Vacate Judgment and Death Sentence filed on September 1, 1989, pursuant to Miss. Code Ann. § 99-39-1, et seq. (1994), otherwise known as the Mississippi Uniform Post-Conviction Collateral Relief Act. Upon review of his petition, we find that Cole was sentenced in violation of the Eighth Amendment since the jury was permitted to consider the especially "heinous, atrocious, and cruel" aggravator which was constitutionally infirm in the absence of a limiting or narrowing instruction. As a matter of state law, this Court may not reweigh the aggravating or mitigating circumstances or conduct a harmless error analysis to uphold the sentence of death on appeal. Accordingly, the denial of post-conviction relief is reversed and Cole's sentence of death is vacated. This case is remanded to the Circuit Court of Hinds County so that Cole may be sentenced for his capital murder conviction by a properly instructed jury.
West Cole was convicted of capital murder and sentenced to death by virtue of jury verdicts returned in the Circuit Court of the Second Judicial District of Hinds County during a trial conducted on July 23-27, 1984. Cole's conviction and sentence grew out of the December 22, 1983 slaying of Mrs. Nettie Mae Whitten, an elderly woman and proprietress of the Midway Grocery near Raymond, Mississippi.[1] Cole gave a written confession to the police, and the Mississippi State Hospital at Whitfield found him mentally competent to stand trial after conducting a mental examination pursuant to the request of Cole's attorney. In its sentencing verdict, the jury specifically found that Cole actually killed Nettie Mae Whitten, and that he contemplated that lethal force would be used. The jury then found the existence of the following four (4) aggravating circumstances:
(1) The capital murder was committed by a person under a sentence of imprisonment.
(2) The defendant was previously convicted of another capital offense or a felony involving the use of or threat of violence to the person.
(3) The capital murder was committed intentionally while the defendant was engaged in the commission of robbery; and was committed for pecuniary gain.
(4) The capital murder was especially heinous, atrocious or cruel.
Cole raised eighteen separate issues on direct appeal to this Court. On July 29, 1987, this Court, in a divided opinion, affirmed both Cole's conviction of capital murder and the sentence of death. Cole v. State, 525 So.2d 365 (Miss. 1987). Rehearing was denied on June 3, 1988. Certiorari to the Supreme Court of the United States was denied on October 31, 1988, and rehearing was denied on January 9, 1989. An execution date of September 13, 1989, was set by this Court and later stayed after the filing of the present application.
Two other opinions relevant to the disposition of the present application are Cole v. State, 608 So.2d 1313 (1992), and Cole v. State, 608 So.2d 1331 (Miss. 1992), both of which upheld denials by the trial court of post-conviction relief sought on the basis of Cole's allegedly uncounseled guilty pleas in 1957 and 1963 to manslaughter and attempted rape, respectively.

THE LAW

A. Issues Procedurally Barred
Miss. Code Ann. § 99-39-3(2) (1994) provides that "[d]irect appeal shall be the principal means of reviewing all criminal convictions and sentences ..." The purpose of the remedies contained in the post-conviction relief act is to provide prisoners with a procedure, *773 limited in nature, to review issues or errors which "in practical reality could not be or should not have been raised at trial or on direct appeal." § 99-39-3(2).
Post-conviction relief does not lie for facts and issues which were litigated at trial or on direct appeal. Similarly, post-conviction relief is not granted upon facts and issues which could or should have been litigated at trial and on appeal. Smith v. State, 434 So.2d 212, 215 n. 2 (Miss. 1983). Moreover, "[t]he procedural bars of waiver, different theories, and res judicata and the exception thereto as defined in Miss. Code Ann. § 99-39-21(1-5) are applicable in death penalty PCR Applications." Lockett v. State, 614 So.2d 898, 902 (Miss. 1992).
In Smith v. State, a death penalty case, this Court opined:
We are compelled to note that in the instant case, as is all too often the case in similar post-conviction relief efforts which come before this Court, the petitioner is in actuality merely seeking to relitigate his case. Such is not the proper function of post-conviction relief proceedings in Mississippi. The fair and orderly administration of justice dictates that a person accused of a crime be afforded the opportunity to present his claims before a fair and impartial tribunal. It does not require that he be given multiple opportunities to "take a bite at the apple." Likewise, the orderly administration of justice does not require this Court to "lead a defendant by the hand" through the criminal justice system. It is this Court's responsibility to provide a meaningful opportunity for defendant to raise his claims and have them adjudicated. [emphasis added]
434 So.2d at 220. We turn now to the four claims by Cole that are procedurally barred from consideration in a post-conviction environment.

I. Prosecution of Cole By a Relative of the Victim
Amy Whitten, one of the prosecutors at trial for the State of Mississippi, was related to the victim by marriage. The deceased, Nettie Mae Whitten, was Amy Whitten's paternal step-grandmother. Cole claims his prosecution by a relative of the victim deprived him of due process of law. This claim is barred, but even if not, it certainly provides no basis for the granting of Cole's application.
The facts demonstrate that defense counsel, Davey Tucker, was well aware of the kinship at the time of trial and voiced no objection. He could have objected to Whitten's continued participation in the prosecution of the case had he desired to do so. Tucker made no objection, nor was the point raised on appeal. Accordingly, this claim is procedurally barred by the doctrine of waiver pursuant to Miss. Code Ann. § 99-39-21(1) unless Cole can show or demonstrate cause or actual prejudice in accordance with Miss. Code Ann. § 99-39-21(4) and (5). He has failed to demonstrate fundamental constitutional error, an intervening decision, cause for failing to raise this claim on direct appeal, or that this fact adversely affected the outcome of his conviction or sentence. Therefore, this assignment of error remains procedurally barred by the doctrine of waiver.

II. Comment on Cole's Failure to Testify
Cole claims the prosecutor directly commented on his failure to testify during the guilt-finding phase of his trial for capital murder when he/she stated: "That's five hundred dollars. Five hundred dollars. And he hadn't given you any explanation where that came from. And the reason he hadn't is because he can't." Cole also says the prosecutor made a second impermissible comment concerning the nonproduction of bloody clothing. Finally, Cole argues the prosecutor improperly commented on his appearance at trial.
Not only was there no objection raised during trial concerning these comments, no claim was raised on direct appeal bringing these issues to this Court's attention. Nor did this Court invoke its plain error rule. Because these claims could and should have been raised at trial and on direct appeal, they are procedurally barred by the doctrine of waiver or forfeiture.
*774 In addition, this Court addressed the issue of prosecutorial misconduct in its written opinion, holding specifically that claims without contemporaneous objection were barred. Cole v. State, 525 So.2d at 369. Heightened appellate scrutiny in death penalty cases does not require abandonment of our contemporaneous objection rule which applies with equal force to death cases. For many years we have held that trial errors cannot be raised in this Court for the first time on appeal. See, e.g., Jefferson v. State, 386 So.2d 200 (Miss. 1980).
In Leverett v. State, 197 So.2d 889, 890 (Miss. 1967), this Court, quoting from Collins v. State, 173 Miss. 179, 180, 159 So. 865 (1935), stated the following:
The Supreme Court is a court of appeals, it has no original jurisdiction; it can only try questions that have been tried and passed upon by the court from which the appeal is taken. Whatever remedy appellant has is in the trial court, not in this court. This court can only pass on the question after the trial court has done so.
This Court explained the underlying bases for the existence of a contemporaneous objection rule in Oates v. State, 421 So.2d 1025, 1030 (1982):
There are three basic considerations which underlie the rule regarding specific objections. It avoids costly new trial. Boring v. State, 253 So.2d 251 (Miss. 1971). It allows the offering party an opportunity to obviate the objection. Heard v. State, 59 Miss. 545 (Miss. 1882). Lastly, a trial court is not put in error unless it had an opportunity to pass on the question. Boutwell v. State, 165 Miss. 16, 143 So. 479 (1932).
Accordingly, the claims in his petition for post-conviction relief are barred, implicitly if not directly, by the doctrine of res judicata found in Miss. Code Ann. § 99-39-21(3).

III. Cole's Confession
The target of this claim is Cole's alleged mental retardation, i.e., his low intelligence level, and its affect upon Cole's ability to give a free and voluntary confession and to understand his Miranda rights.
First, Cole argues his confession was introduced in violation of his Miranda and due process rights. According to Cole, his mental retardation prevented him from knowingly and intelligently waiving his constitutional rights. Second, Cole contends his confession was involuntary for this same reason.
These claims are barred from consideration by this Court in a post-conviction environment because the only issue raised on direct appeal concerning Cole's confession was whether or not he was effectively prevented from arguing to the jury matters concerning the credibility of his confession. This Court concluded "that Cole was not prevented from challenging the voluntariness of the confession and this assignment of error is without merit." Cole v. State, 525 So.2d at 369.
It is clear that this Court's opinion and the transcript of trial reflect that Cole's low intelligence level was considered during the suppression hearing in determining the voluntariness of his confession. Therefore, the portions of these two claims that were raised and decided on direct appeal are barred via the doctrine of res judicata. Those parts that are raised here for the first time in Cole's post-conviction application are barred by the doctrine of waiver because they could and should have been raised at trial and on direct appeal. Lockett v. State, 614 So.2d at 893.

IV. Denial of Cole's Right to Testify
Cole says he was denied his right to testify during the guilt-finding and sentence-determination phases of his bifurcated trial, all in violation of the State and Federal constitutions. This issue was never raised at trial or on direct appeal. It could have been raised and should have been raised. Because it was not, the matter is barred via the doctrine of waiver/forfeiture.
In any event, the claim fails on its merits. This Court will look to the transcript of trial to determine whether or not a defendant "insisted upon taking the [witness] stand and that he was prevented from doing so by counsel or the court." Cabello v. State, 524 So.2d 313, 318 (Miss. 1988), quoting Merritt v. State, 517 So.2d 517, 520 (Miss. 1987). Here, the defendant personally decided not to testify *775 during the guilt-finding phase. The circuit judge questioned Cole about this decision in a colloquy that consumes nine pages of the record. Following several attorney/client conferences and the questioning by the trial judge, Cole stated he did not want to testify and the decision was of his own free will.
Cole was offered an opportunity to testify on two different occasions during the sentencing phase. The defendant had no problem understanding and responding to questions propounded by the circuit judge during the inquiry. In the end, Cole elected not to testify in his own behalf. Cole was given every opportunity to testify in the presence of the jury. He simply exercised his right to decline the invitation to do so.

B. Issues Addressed on the Merits

I. Effective Assistance of Trial Counsel
Cole seeks leave of this Court to file in the trial court post-conviction papers assailing the effectiveness of his trial lawyer, Davey L. Tucker. Of course, "no post-conviction motion would be complete without this allegation of error." Cabello v. State, 524 So.2d 313, 315 (Miss. 1988). This is especially true in a death penalty case. Cole argues that Tucker was ineffective prior to trial and during trial. Since Tucker represented Cole both at trial and during direct appeal, this is the first "meaningful opportunity" Cole has had to present his claim of ineffective counsel. See Read v. State, 430 So.2d 832, 842 (Miss. 1983).
The test to be applied in cases involving the alleged ineffectiveness of counsel is whether or not counsel's overall performance was (1) deficient and (2) whether or not the deficient performance, if any, prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The burden is on the defendant to demonstrate both prongs. Edwards v. State, 615 So.2d 590, 596 (Miss. 1993). The determination of whether counsel's performance was both deficient and prejudicial must be determined from the "totality of the circumstances." Frierson v. State, 606 So.2d 604, 608 (Miss. 1992). The target of appellate scrutiny in evaluating the deficiency and prejudice prongs of Strickland is counsel's "over-all" performance. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss. 1992). There is a strong, yet rebuttable, presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Frierson, 606 So.2d at 608. There is, likewise, a presumption that decisions made by defense counsel are strategic. Leatherwood v. State, 473 So.2d 964, 969 (Miss. 1985); Armstrong v. State, 573 So.2d 1329, 1334 (Miss. 1990).
Under the second or prejudice prong the movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Cabello v. State, 524 So.2d 313, 315 (Miss. 1988). Stated somewhat differently, the defendant must prove that "the lawyer's errors were of such a serious magnitude as to deprive the defendant of a fair trial because of a reasonable probability that, but for counselor's unprofessional errors, the results would have been different." Martin v. State, 609 So.2d 435, 438 (Miss. 1992).
Cole must at least state a "claim, prima facie," with respect to each prong to be entitled to an evidentiary hearing on the merits. Read v. State, 430 So.2d 832, 841 (Miss. 1983). In order to establish a prima facie claim, a defendant must allege "with specificity and detail" that his counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive him of a fundamentally fair trial. Perkins v. State, 487 So.2d 791, 793 (Miss. 1986). The task of this Court in a post-conviction environment is summarized in Jordan v. State, 577 So.2d 368, 369-71 (Miss. 1990), where we stated:
The question before us is whether Jordan has presented a complaint such that he is entitled to an evidentiary hearing in the Circuit Court.
* * * * * *
In the present posture of the matter, we consider whether Jordan's showing in his application for post-conviction relief, his *776 affidavit, coupled with the record made at his trial, render it sufficiently likely he received ineffective assistance of counsel that we should order an evidentiary hearing regarding the matter. Put otherwise, on the papers and record before us, can we say, with confidence that at any evidentiary hearing Jordan will not be able to show he was denied effective assistance of counsel? [emphasis supplied]
Cole has certainly pinpointed in mega-detail the areas where he feels counsel's performance was deficient. He has attached a number of affidavits to his pleadings. Upon review of the contentions in his brief, we can say with confidence that, at an evidentiary hearing, Cole will not be able to show he was denied the effective assistance of counsel.

a. Performance Prior to Trial
Cole contends his lawyer's performance fell below minimum acceptable standards when he failed to investigate his mental capacity, i.e., Cole's low intelligence quotient, and develop this matter for use in assailing the voluntariness of his confession and as a mitigating circumstance. The facts, however, demonstrate that defense counsel, Davey Tucker, did investigate Cole's mental capacity by filing a petition for mental examination and evaluating the results. The report indicated that Cole was competent to stand trial and criminally responsible for his actions. However, it did not show that the evaluators found his I.Q. to be 59, a fact not known by defense counsel throughout the trial.
"[A] strategic decision to pursue less than all plausible lines of defense will rarely, if ever, be deemed ineffective if counsel first adequately investigated the rejected alternative." Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir.1983) (quoting Washington v. Strickland, 693 F.2d 1243, 1253-54 (5th Cir.1982)). Defense counsel was the one responsible for requesting the mental examination of Cole. The issue becomes whether Tucker was ineffective for failing to conduct further investigation of Cole's psychological profile which would have revealed the I.Q. information.
A defendant who alleges that trial counsel's failure to investigate constituted ineffectiveness must also state with particularity what the investigation would have revealed and specify how it would have altered the outcome of trial, Nelson v. Hargett, 989 F.2d 847 (5th Cir.1993), or "how such additional investigation would have significantly aided his cause at trial." Merritt v. State, 517 So.2d 517, 518 (Miss. 1987).
An interview with the doctors at the state hospital would have revealed the I.Q. information. Nonetheless, Cole fails to demonstrate how it would have significantly aided his defense. Counsel, of course, did place emphasis on the fact that Cole had only a third grade education and could neither read nor write. These facts were brought home to the jury, and to the trial court on the motion to suppress the confession, even if Cole's numerical I.Q. was not.
With respect to Cole's confession, this Court has concluded that many mentally deficient defendants have had the capacity to knowingly waive constitutional rights. Kniep v. State, 525 So.2d 385 (Miss. 1988); Johnson v. State, 511 So.2d 1360 (Miss. 1987); Jones v. State, 461 So.2d 686 (Miss. 1984); Neal v. State, 451 So.2d 743 (Miss. 1984); Billiot v. State, 454 So.2d 445 (Miss. 1984); Gator v. State, 402 So.2d 316 (Miss. 1981); Lee v. State, 338 So.2d 399 (Miss. 1976).
Hindsight, of course, is always 20/20. It is easy to criticize counsel with the aid of "backfocal" lenses. However, the lack of I.Q. evidence does not reasonably undermine confidence in the outcome of the trial in light of the circumstances of this case. The Fifth Circuit concluded in the case of Celestine v. Blackburn, 750 F.2d 353, 357 (5th Cir.1984) that the evidence of appellant's I.Q. would not have been significant in light of the defense's argument that the appellant had other psychological problems and an underprivileged background. See Willie v. Maggio, 737 F.2d 1372 (5th Cir.1984) (concluding that counsel was not ineffective for omitting additional evidence of defendant's troubled adolescence since jury was already aware of this fact from other sources). Similarly, Cole's attorney argued that Cole had very minimal education and a deprived childhood. The *777 jury knew about Cole's lack of education, and his numerical I.Q. does not alter the existence of the four aggravating circumstances found by the jury. While it may have been additional evidence of Cole's mental aptitude, we do not find a reasonable probability in this case that numerical evidence of Cole's low intelligence quotient would have changed the jury's conclusion that he should suffer death for his transgression. Accordingly, counsel was not constitutionally ineffective for any failure to further pursue this line of defense.
An evidentiary hearing is not necessary where the allegations in a petition for post-conviction relief are specific and conclusory. Celestine, 750 F.2d at 358. An evidentiary hearing in this case will not reveal anything which has not been adequately presented in Cole's petition. Therefore, Cole is not entitled to relief under this portion of his petition.

b. Performance During Trial

1. Failure to Request a Continuance
Cole claims that his lawyer's failure to request a continuance after the prosecution called Tracy Pope as a so-called "surprise" witness constituted ineffective assistance of counsel. Pope subsequently identified Cole as the man she had seen at Midway Grocery on the day of the murder.
In Cole's direct appeal, this Court addressed this issue within the context of an alleged discovery violation under Rule 4.06 of the Criminal Rules of Circuit Court Practice. 525 So.2d at 367-68. After interviewing Pope during a recess called specifically for that purpose, counsel renewed his objection to Pope's testifying at trial, but counsel failed to request a continuance. For this reason, we correctly declined to put the trial judge in error for failing to grant relief which was never requested.
This Court is not inclined to find either a deficient performance or prejudice in the failure of defense counsel to request a continuance following his opportunity to interview the witness. Cabello v. State, 524 So.2d 313, 318 (Miss. 1988). What would a continuance have gained that the 25 minute interview with Pope did not? Counsel conducted a four page voir dire of Pope with respect to her identification of Cole. Counsel's cross-examination of Pope consists of fourteen pages of transcript. Cole has not enlightened us as to the identity of the stones left unturned and the bridges left unburned with respect to his questioning of this witness and any defense to her testimony. Cole has failed to establish in his petition a deficiency or resulting prejudice. Accordingly, this claim is rejected as a basis for a post-conviction evidentiary hearing.

2. Failure to Object
Complaints concerning counsel's failure to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall within the ambit of trial strategy. Murray v. Maggio, 736 F.2d 279 (5th Cir.1984). Some of the comments complained about under this assignment of error were fleeting remarks that counsel may not have wanted to draw attention to by voicing an objection. See Cabello v. State, 524 So.2d 313, 318 (Miss. 1988) (failure to object could have represented "a strategic decision to avoid additional comment.")
This Court is not prepared to say that trial counsel's failure to object in the eight instances cited by Cole, viewed either individually or in combination with the other alleged deficiencies, were so egregious as to constitute a deficiency in performance or prejudicial to Cole's defense as to affect the outcome of trial.

3. Two Prior Judgments as Aggravating Circumstances
Cole claims his counsel was ineffective because he failed to request a continuance after the State introduced into evidence during the sentencing phase two prior convictions for manslaughter and attempted rape. Any omission was not prejudicial to Cole because this Court subsequently held in two separate cases that the prior convictions were valid and not subject to attack through Cole's other petitions for post-conviction relief. See Cole v. State, 608 So.2d 1313 (Miss. 1992); Cole v. State, 608 So.2d 1331 (Miss. 1992).

*778 4. Lesser Included Offense Instruction of Murder
Cole contends trial counsel was ineffective because he failed to object to jury instruction S-3, a transitional instruction which informed the jury, inter alia, that it should not consider the instruction defining the lesser included offense of murder unless it found that the defendant was not guilty of capital murder."
We agree with the cases cited by the State that a transitional instruction like that found in the case at bar was proper and appropriate. State v. Wussler, 139 Ariz. 428, 429-30, 679 P.2d 74, 75-76 (1984); People v. Kurtzman, 242 Cal. Rptr. 115, 121 (Cal. App. 1987); State v. Wilkins, 34 N.C. App. 392, 238 S.E.2d 659, 664 (1977). Defense counsel simply had no reason to object under Mississippi law. The only authority cited by Cole, Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), requires a court to submit an instruction for a lesser included offense if it is warranted by the evidence. Pursuant to the defense's request, Cole was granted a lesser-included offense instruction defining the crime of murder less than capital. Therefore, there was no deficiency in counsel's performance.
Cole has neither alleged nor demonstrated any prejudice flowing from the granting of this instruction. Therefore, Cole was not denied the effective assistance of counsel under this assignment.

5. Robbery & Grand Larceny as Aggravating Circumstances
Cole argues that counsel's failure to object to the introduction of his prior convictions of grand larceny and simple robbery constituted ineffective assistance of counsel because the convictions "were irrelevant and prejudicial." Conversely, we agree with the State that both convictions were introduced in support of two of the aggravating circumstances set out in the sentencing statute, (5)(a) and (5)(b).
Miss. Code Ann. § 99-19-101(5)(a) defines the following aggravating circumstance: "The capital offense was committed by a person under sentence of imprisonment." Cole was serving a suspended sentence pursuant to his grand larceny conviction at the time he committed the murder. Such is considered a sentence of imprisonment. Jenkins v. State, 607 So.2d 1171, 1180 (Miss. 1992); Lockett v. State, 517 So.2d 1317, 1337 (Miss. 1987); Evans v. State, 422 So.2d 737, 741-42 (Miss. 1982). Thus, the conviction for grand larceny was relevant, and any objection thereto would have been futile. Counsel's failure to object did not amount to ineffectiveness.
Miss. Code Ann. § 99-19-101(5)(b) defines the following aggravating circumstance: "The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person." Robbery is per se a crime of violence. Conner v. State, 632 So.2d 1239, 1268 (Miss. 1993). Once again, counsel's failure to object did not amount to ineffectiveness.

6. Failure to Make an Offer of Proof
Cole contends he was prevented from introducing, in mitigation of his sentence, testimony of his religious convictions and testimony reflecting the effect on him of the death of his step-child. Certain testimony along these lines from Purvis Davis and Evalena Jackson, two witnesses produced by the defense during the sentence-determination phase, was excluded by the trial judge on the grounds of hearsay.
First, Cole claims that Davis was precluded from testifying with regard to conversations he had with Cole about religion. Second, Cole argues that Jackson was prevented from testifying about Cole's statements concerning the death of his step-child. Cole says that trial counsel was ineffective because he failed to make an offer of proof at trial.
Cole has failed to allege with specificity the expected content of their testimony. Consequently, we can not make any determination whether it would imply prejudice to his case. It is enough to say that Davis did testify about Cole's church habits, and testimony concerning the effect of the step-child's death was elicited from two other witnesses, Ms. Mooney and Mr. Davis. No prejudice has *779 been alleged or demonstrated where, as here, the mitigating evidence concerning religious background and belief and evidence of the defendant's grief after the death of Cole's step-child was adequately established via the testimony of other witnesses. Defense counsel's failure to make an offer of proof did not create the prejudice necessary to establish an ineffective assistance of counsel claim.

7. Especially Heinous, Atrocious, or Cruel
Cole claims his lawyer was ineffective because he failed to object to the jury instruction that the murder was "especially heinous, atrocious and cruel." At the time of Cole's trial, there was no viable basis under state law for objecting to this instruction. Consequently, any failure to object is not a viable ground for a claim of ineffective counsel. The substantive claim dealing with this aggravating circumstance is addressed below.

8. Sentencing Instructions
Cole argues that certain sentencing instructions impermissibly shifted the burden of proof to the defendant and precluded the jury from considering the mitigating circumstances. Conversely, this Court has held that the instruction given in this case neither shifted the burden of proof to the defendant nor limited consideration of mitigating circumstances. Chase v. State, 645 So.2d 829, 860 (Miss. 1994).

9. Counsel's Cross-examination of Dr. Galvez
Finally, Cole claims that trial counsel's cross-examination of Dr. Galvez rendered counsel ineffective because it produced "damning" evidence against the defendant. According to Cole, responses made by Galvez during cross-examination strongly suggested to the jury that Cole could not be rehabilitated.
Most of the cross-examination of Dr. Galvez was in the abstract and not related directly to Cole. In addition, Cole had previous convictions for rape, manslaughter, robbery, and grand larceny. We agree with the State the jury could have easily reached the conclusion that there was little hope for the rehabilitation of Cole. Applicant has demonstrated no deficiency or prejudice flowing from counsel's cross-examination of Galvez.

II. Brady Violation
Cole claims the State's failure to disclose Cole's mental retardation to his lawyer violated his right to due process and to the effective assistance of counsel. The State counters with the argument that there was no Brady violation because the State did not suppress or withhold any evidence favorable to the accused upon request.
The evidence favorable to Cole allegedly withheld in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), was a psychological test result reflecting that Cole had an intelligent quotient (I.Q.) of 59 which Cole says reflects his mental retardation. An affidavit from Helen C. Robertson, a psychologist, executed on July 13, 1989, for the purpose of Cole's post-conviction pleading reflects in paragraph seven that "[t]ests administered to West Cole showed that he had a full scale IQ of 59." The supporting affidavit of Gerald O'Brien, a private psychologist hired by Cole for the purpose of Cole's post-conviction endeavor, reflects that an I.Q. of 59 would put Cole "well within the range of persons characterized as mentally retarded." The State contends that not only was the I.Q. not withheld in violation of Brady, this evidence would not have affected either the admission into evidence of Cole's confession, his guilt of the crime charged, or his sentence of death.
In Brady, the Supreme Court of the United States held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97, 10 L.Ed.2d at 218.
Prior to trial, defense counsel requested a mental examination to determine Cole's competency to stand trial. On the same day, March 12, 1984, defense counsel also filed a discovery request which asked for, inter alia, a copy of all crime lab reports or the results of any tests made, inspection of all physical or documentary evidence in the State's possession, *780 and a copy of all exculpatory material. The results of the mental examination were forwarded to defense counsel and reflect that Cole was not suffering from any mental disorder and was competent to stand trial. The record does not reflect any further communications between any of the parties concerning the mental state of the defendant.
This chain of events does not suggest that there was any wrongdoing by the prosecution. Defense counsel requested and received a mental examination to determine Cole's competency to stand trial, not to determine his intelligent quotient. Defense counsel received the psychological report which was requested from the expert at the state hospital. The expert appointed by the trial court with the defendant's knowledge and at the defendant's request was not a "state actor" associated with the prosecution. See Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (finding that expert improperly testified beyond subject matter expected by defense which transformed witness into state actor). Nor is this a case where the prosecution has attempted to shield any nondisclosure of discoverable material behind a curtain of agency. See Fuselier v. State, 468 So.2d 45 (Miss. 1985).
Cole's lawyer now claims that the diagnosis "No Mental Disorder" led him to believe that the experts had not found Cole mentally retarded. Counsel, on the other hand, was well aware that Cole could neither read nor write and that he had only a third grade education. He had interviewed his client on numerous occasions and was, no doubt, well aware that Cole was intellectually weak. Moreover, both the trial judge and the jury were fully aware that Cole had only a third grade education and was unable to read or write. In other words, in determining the voluntariness of Cole's confession and in resolving the questions of his guilt and sentence, the fact finders were fully aware that Cole was mentally weak.
Even though the evidence was not improperly shielded from the defense, it is unlikely that Cole's low I.Q. would have been exculpatory, i.e. resulted in the suppression of his confession or an acquittal or a sentence of life imprisonment. A confession is not rendered involuntary simply because the person making it is mentally weak. Lee v. State, 338 So.2d 399 (Miss. 1976). "[C]oercive police activity is a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473, 481-84 (1986). The focus remains on the conduct of the state in obtaining the confession. Id. In other words, we are confident in this case the presentation of Cole's numerical I.Q. would not have changed the outcome of the proceedings with regard to voluntariness.
Nor is it more likely than not that it would have changed the outcome of Cole's trial. The jury knew that Cole was mentally deficient. Defense counsel took great care in establishing that Cole had only a third grade education and could neither read nor write. Cole personally, albeit briefly, spoke to the jury during the sentencing phase. Under the trial court's catch-all instruction dealing with mitigating circumstances, the jury had an opportunity to consider the low intelligence level of the defendant.
For these reasons, there was no Brady violation in defense counsel's failure to learn of Cole's intelligence quotient from the experts at the state hospital who were requested by the defense to perform a psychological examination of Cole.

III. Conflict of Interest
Cole contends that because Tucker, his trial lawyer, and James Breland, the county prosecutor who prosecuted Cole's preliminary hearing, shared office space, a conflict of interest existed between them which operated to deprive Cole of his Sixth Amendment right to counsel.
First, this Court disagrees with the State this claim should be procedurally barred for lack of objection. The State, in the alternative, has responded to the merits. We concur with its observation that prejudice cannot be presumed; rather, actual prejudice must be both alleged and demonstrated. See Strickland v. Washington, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 *781 (1984); Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346-47 (1980) (standing for proposition that "[p]rejudice is presumed only if the defendant demonstrates that counsel `actively represented conflicting interests' and that `an actual conflict of interest adversely affected his lawyer's performance.'"). The mere fact that Tucker shared office space with Breland is not sufficient to demonstrate an actual conflict of interest. Therefore, Cole fails to demonstrate a prima facie claim that his attorney had a conflict of interest.

IV. Adequacy of Report of Court-Appointed Experts
Cole claims he was deprived of his rights to due process and equal protection, as well as his Fifth, Sixth, and Eighth Amendment rights, when the state's experts ordered to evaluate him prior to trial failed to conduct an adequate evaluation into Cole's mental state and to furnish an adequate report to defense counsel. We deny the portion of the application predicated on this ground because the record reflects that Cole was afforded a constitutionally adequate evaluation, and counsel was furnished a constitutionally adequate report.
Prior to trial, defense counsel filed a petition for mental examination for the purpose of determining Cole's competency to stand trial, i.e., "his ability to make a defense." An order was entered by the trial court committing Cole to the Mississippi State Hospital for the purpose of determining whether or not he was psychotic. Another order was entered by the trial judge reflecting that the purpose of the mental examination was "to resolve any questions of the mental capacity, including competency to stand trial ... as well as [Cole's] responsibility under the M'Naghten Rule."
The letter signed and forwarded by Dr. Lancaster, a neurologist, and Helen C. Robertson, Ph.D., a psychologist, to the trial judge, defense counsel, and the district attorney reflected a unanimous conclusion that Cole was "competent to stand trial" and that they had "seen no evidence of mental disorder which would have impaired his ability to distinguish right from wrong at the time of the crime. His diagnosis is No Mental Disorder."
The case relied upon by Cole, Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1984), requires the trial judge to allow expert psychiatric or psychological assistance to indigent defendants upon a threshold demonstration that sanity will be an issue or for the purpose of rebutting the State's experts regarding mental condition. Neither situation existed here. The psychologist at the state hospital performed the specific examinations ordered by the trial court which responded directly to the requests made by defense counsel. Both the examination and the report flowing in its wake were constitutionally adequate.

V. Undefined "Especially Heinous" Aggravating Factor
The jury in this case found unanimously and beyond a reasonable doubt the existence of the following aggravating circumstances:
(1) The Capital Murder was committed by a person under sentence of imprisonment.
(2) The defendant was previously convicted of another capital offense or of a felony involving the use or threat of violence to the person.
(3) The Capital Murder was committed intentionally while the defendant was engaged in the commission of robbery; and was committed for pecuniary gain.
(4) The Capital Murder was especially heinous, atrocious or cruel.
The jury was allowed to consider the following circumstances in mitigation of sentence:
(1) The Defendant did not resist arrest.
(2) Upon his arrest the Defendant cooperated with the Police.
(3) The age (57 or 58) of the Defendant at the time of the murder.
(4) The Defendant was gainfully employed at the time of the crime.
(5) The Defendant has shown compassion love and devotion by caring for his father in time of fatal illness.
(6) The Defendant has shown compassion love and devotion for caring for Kevin (a step-son) in time of fatal illness.

*782 (7) The Defendant is a Mason, a fraternal society which teaches Christian beliefs.
(8) Any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought you during the trial of this case which you, the jury, deem to be mitigating on behalf of the defendant.
Cole contends the trial court's sentencing instruction presenting for the jury's consideration the especially "heinous, atrocious, and cruel" aggravator was constitutionally infirm in the absence of a limiting or narrowing instruction further defining these terms.
There can be no doubt that the submission to the jury, without a limiting instruction, of the "especially heinous" aggravating factor violated the Eighth Amendment. Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Moreover, our cases have indicated this claim will not be barred from consideration on post-conviction review. See, e.g., Gilliard v. State, 614 So.2d 370 (Miss. 1992). "This issue is procedurally viable, despite the fact that [the defendant] did not object to the instruction at trial or on direct appeal." Woodward v. State, 635 So.2d 805, 811 (Miss. 1993).
The State invites this Court to perform a reweighing and/or harmless error analysis on the undefined aggravator. It is not a violation of due process to have an appellate court perform a reweighing or harmless error analysis when an invalid aggravating circumstance is found to exist. Clemons v. Mississippi, 494 U.S. 738, 745-46, 110 S.Ct. 1441, 1446-47, 108 L.Ed.2d 725, 741-42 (1990). However, we do not have the authority as a matter of state law to reweigh aggravating and mitigating circumstances in order to uphold a death sentence based upon an improperly defined aggravating circumstance. Clemons v. State, 593 So.2d 1004, 1007 (Miss. 1992). This logically precludes this Court from engaging in a harmless error analysis as well since it would involve reweighing. Wilcher v. State, 635 So.2d 789, 791 (Miss. 1993).
On August 23, 1994, this Court was granted the statutory authority to "determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of the invalid circumstance was harmless error, or both." Miss. Code Ann. § 99-19-105 (Supp. 1995). Without addressing the constitutionality of that statute in general, we have concluded that this statutory provision may not be applied retroactively to cases tried and affirmed on direct appeal before its passage. Hill v. State, 659 So.2d 547, 552 (1995). Retroactive application of Miss. Code Ann. § 99-19-105 is a violation of our state constitutional provisions against ex post facto law. Id. Thus, § 99-19-105 remains inapplicable to the facts of this case. We remain bound by Clemons which prohibits this Court from reweighing the aggravating and mitigating circumstances on appeal.
In its brief, the State relied solely on the assertion that application of § 99-19-105 would not be a violation of our constitutional provisions against ex post facto law. Since we have held otherwise, their argument must fail. Cole is therefore entitled to resentencing by jury determination. Since the trial court's denial of an evidentiary hearing was synonymous with a denial of post-conviction relief, the trial court below is reversed and Cole's sentence of death is vacated. The case is remanded to the Circuit Court of Hinds County for the resentencing of Cole by a jury for his capital murder conviction. Since this case is being reversed on this error alone, the remaining issues in Cole's application will not be addressed.

CONCLUSION
All but one of Cole's contentions in support of post-conviction relief are without merit. Cole's petition for post-conviction relief is granted exclusively because the jury sentenced him using the especially "heinous, atrocious, and cruel" aggravator in the absence of a limiting or narrowing instruction. This was a violation of Cole's Eighth Amendment rights, and as a matter of state law, this Court may not reweigh the aggravating or mitigating circumstances or conduct a harmless error analysis to uphold the sentence of death on appeal. Accordingly, the denial of post-conviction relief is reversed, and this case is remanded to the Circuit *783 Court of Hinds County so that Cole may be sentenced for his capital murder conviction by a properly instructed jury.
THE DENIAL OF POST-CONVICTION RELIEF IS REVERSED. SENTENCE OF DEATH IS VACATED. THIS CASE IS REMANDED TO THE CIRCUIT COURT OF HINDS COUNTY SO THAT COLE MAY BE SENTENCED FOR HIS CAPITAL MURDER CONVICTION BY A PROPERLY INSTRUCTED JURY.
HAWKINS, C.J., and SULLIVAN, PITTMAN and BANKS, JJ., concur.
PRATHER, P.J., concurs in result only.
DAN M. LEE, P.J., concurs in part and dissents in part with separate written opinion joined by JAMES L. ROBERTS, Jr., J.
BANKS, J., concurs with separate written opinion joined by PRATHER, P.J.
SMITH, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J.
DAN M. LEE, Presiding Justice, concurring in part and dissenting in part:
I concur with the majority's opinion insofar as it rejects as meritless the majority of Cole's grounds for reversal. However, once again I must dissent to the majority's continued adherence to its legally untenable position that this Court may not apply harmless-error analysis in cases where the sentencing jury was inadequately instructed as to the so-called "especially atrocious, heinous or cruel" aggravator. See, e.g., Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
This issue has been before this Court many times in recent years and the majority has shown no inclination towards changing its position. Nor have I. Rather than illuminate the inherent weaknesses of the majority's position once again, I simply choose herein to adopt the rationale and arguments contained in my separate opinions in King v. State, 656 So.2d 1168, 1180 (Miss. 1995), and Hill v. State, 659 So.2d 547, 552 (Miss. 1995).
Accordingly, I concur in that part of the majority's opinion that would reject Cole's request for post-conviction relief and respectfully dissent to that portion of the majority's opinion that refuses to apply harmless-error analysis to the case sub judice.
JAMES L. ROBERTS, Jr., J., joins this opinion.
BANKS, Justice, concurring:
I concur with the result reached by the majority. I write briefly to note that I disagree with saying that the failure to follow up and get the IQ number is of no moment on sentence. While it is true that evidence of a low IQ doesn't make aggravators go away, such evidence may be considered as a mitigator or enhance other mitigators in the life or death decision. Dropping out of school before you can read and write is one thing. Having a 59 IQ is another, and perhaps, more compelling thing, in the eyes of a juror.
It should also be noted that the issue of whether professionals at the state hospital are a part of the prosecution team, has been previously addressed by this Court in King v. State, 656 So.2d 1168 (Miss. 1995).
PRATHER, P.J., joins this opinion.
SMITH, Justice, dissenting:
I take issue with the majority's decision to reverse a jury's validly imposed sentence of death upon a cold, violent, extremely dangerous, cruel and calculating killer, West Cole. On December 22, 1983, Cole, using an eighteen-inch lead pipe, repeatedly struck a minimum of thirteen blows to the head of Nettie Mae Whitten. Cole severed a finger in removing a ring from her hand. Mrs. Whitten never recovered from the severe beating and died five days later. Cole confessed orally and in writing to Hinds County Deputies. Cole was tried, found guilty of capital murder and sentenced to suffer the penalty of death.
The jury specifically found that at the time of the murder of Mrs. Whitten, Cole was already under sentence of imprisonment and had a previous conviction of another capital offense or of a felony involving the use or threat of violence to the person; that the murder was intentionally committed while Cole was engaged in a robbery committed for *784 pecuniary gain; and that Mrs. Whitten's murder was especially heinous, atrocious or cruel. The majority now reverses and remands twelve years later affording Cole "another bite at the apple" in his attempt to save his own life which the prior jury found that he should forfeit due to this atrocious killing of Mrs. Whitten. I cannot agree with the majority's decision and consistent with my previously expressed views regarding this issue, I respectfully dissent.
Commencing with Wilcher v. State, 635 So.2d 789 (Miss. 1993), (Smith, J., dissenting), and continuing and including Hill v. State, 659 So.2d 547 (Miss. 1995), (Smith, J., dissenting), I expressed my views regarding the majority's reversal and remand of death cases for resentencing hearings because of the use of the supposed "heinous, atrocious, and cruel" aggravator given to the jury in the absence of a limiting instruction, failure to allow this Court to conduct a reweighing or harmless error analysis upholding the death sentence, and failure to apply Miss. Code Ann. § 99-19-105 (Supp. 1994) allowing this Court to reweigh aggravating and mitigating circumstances or determine whether the inclusion of any invalid circumstance was harmless error, or both. Having expressed fully my views by dissent in Wilcher and Hill, I adopt the same as my respective position in dissent in the case sub judice.
I respectfully dissent.
DAN M. LEE, P.J., and JAMES L. ROBERTS, Jr., J., join this opinion.
NOTES
[1] See Cole v. State, 525 So.2d 365 (Miss. 1987) for a detailed account of the facts.