BRIDGES, J.,
for the Court:
¶ 1. This appeal arises from a denial of post-conviction relief to Vincent Louis Cav-itt in the Circuit Court of Scott County, Mississippi. On June 5, 1997, Cavitt was *1222 indicted for the murder of Willie Coleman. Pursuant to a plea agreement entered into by Cavitt with the State, he pled guilty to the crime of manslaughter and received a sentence of ten years in prison rather than a possible life sentence for murder. Cav-itt’s guilty plea was accepted by the court and Cavitt was remanded to the custody of the Mississippi Department of Corrections.
¶ 2. On December 13, 1999, Cavitt filed his motion for post-conviction relief titled “Motion to Vacate Judgment.” The lower court denied relief to Cavitt. He now appeals to this Court with a barrage of claims attempting to prove why his guilty plea was not valid and should never have been accepted by the court. He asks that his guilty plea be overturned or, at the very least, that his case be reversed and remanded.
FACTS
¶ 3. Cavitt was arrested on March 7, 1997, for the murder of Coleman. His arrest took place in Collinsville, Illinois, and he was subsequently indicted in Scott County, Mississippi. Cavitt argues that he only pled guilty to this crime because he was induced to do so by his attorney, Jack Young. Cavitt claims ineffective assistance of counsel with many sub-claims under that heading. First, Cavitt asserts that Young failed to file a motion to suppress Cavitt’s incriminating statements which he gave to the police in Collinsville, Illinois. Cavitt claims that he was denied an attorney after asking for one to be present at the questioning following his arrest. In addition, Cavitt contends that his right against self-incrimination was violated and that he would not have pled guilty if Young had argued for a suppression of Cavitt’s statements in court. Cav-itt claims that he was coerced by the police into giving these incriminating statements, which ultimately led to his imprisonment.
¶ 4. Cavitt argues that he did not enter a plea of guilty knowingly, voluntarily and intelligently because he was not kept adequately informed about his case by Young. Cavitt asserts that Young accepted the plea agreement offered by the State on Cavitt’s behalf without Cavitt’s knowledge or understanding of the agreement, thereby forcing Cavitt to plead guilty to manslaughter, a lesser charge, and face ten years in prison for doing so. Cavitt claims that he was not advised of the consequences of accepting such a plea bargain and that he would have made a different choice had Young informed him of his possible claim against the Collinsville police for illegal questioning after his arrest.
¶ 5. Cavitt also argues that he suffered an illegal forfeiture of $1655, taken from him by the State as “drug proceeds,” and asserts that, because of this illegal forfeiture, which was not listed in his indictment, he was subjected to double jeopardy for this crime and should therefore be absolved of guilt and released. There are no facts surrounding Cavitt’s alleged forfeiture of this money, nor is there any evidence in the record to clarify when this alleged forfeiture occurred.
LEGAL ANALYSIS
¶ 6. When looking to whether an attorney has satisfactorily represented his client, the test to be applied is the one set out by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The two prongs of the Strickland test require us to ask “(1) whether counsel’s overall performance was deficient and (2) whether or not the deficient performance, if any, prejudiced the defense.” Taylor v. State, 682 So.2d 359, 363 (Miss.1996). See also Cole v. State, 666 So.2d 767, 775 (Miss.1995). The burden to prove both of these prongs is on the defendant. *1223 Taylor, 682 So.2d at 363; Cole, 666 So.2d at 775; Edwards v. State, 615 So.2d 590, 596 (Miss.1993).
¶ 7. “The adequacy of counsel’s effect should be measured by a totality of the circumstances.” Cole, 666 So.2d at 775. In other words, it is the task of this Court to view Young’s “over-all” performance throughout Cavitt’s case. Nicolaou v. State, 612 So.2d 1080, 1086 (Miss.1992). In looking to the total performance of the attorney, we keep in mind the strong but rebuttable presumption that counsel’s actions were reasonable and were the product of sound legal strategy. Taylor, 682 So.2d at 363; Cole, 666 So.2d at 775. The second prong of the Strickland test dictates that the defendant bears the burden of showing that there is a “reasonable probability that, but for counsel’s unprofessional errors, the result would have been different.” Taylor, 682 So.2d at 363.
¶ 8. To begin, Cavitt offers nothing in the record that speaks to these alleged violations of his constitutional rights by Illinois police. Cavitt has shown nothing that would suggest that Young knew anything about the alleged illegal questioning by the police, nor has he produced anything concrete to show that the illegal questioning happened at all. There is no evidence that Young either represented or knew Cavitt at the time these incidents supposedly occurred. The record is devoid of any information pertinent to Cav-itt’s arrest for this crime or how he came to be arrested in Collinsville, Illinois. Because we are not finders of fact and our review is limited to the information provided in the record, we are not equipped to make a decision in this case regarding possible violations of Cavitt’s rights by Illinois police. What we can review, however, is Young’s performance as Cavitt’s attorney in this case.
¶ 9. We find that Young provided adequate, if not zealous, counsel to Cavitt throughout this case. Based on the information in the record provided, Young filed numerous motions and discovery requests on Cavitt’s behalf, negotiated plea arrangements on Cavitt’s behalf and was present for Cavitt’s plea hearing. We simply can find nothing that would suggest that Young ignored his duties to Cavitt in any way. As we previously noted, we have no proof that Young was even aware of possible violations of Cavitt’s rights by Illinois police, or what did or did not happen upon his arrest. We are convinced that Young pursued every avenue to discover the facts of this case and he made numerous attempts to protect his client and plead his case. The record is all we have here, and according to that documentation, Young provided sufficient counsel to Cav-itt.
¶ 10. We find no evidence to suggest that Young coerced Cavitt into accepting the plea agreement offered by the State. Cavitt has boldly accused his attorney of accepting a plea agreement on his behalf without his being aware of the details of the agreement. There is simply nothing we can find that would substantiate this claim. By all accounts in the transcript of the plea hearing, Cavitt was well aware of the plea arrangement and knew exactly what his guilty plea would earn him — a reduced charge of manslaughter and a lesser sentence of ten years served in prison as opposed to a life sentence for murder. The plea hearing transcript indicates that Cavitt was fully advised of the rights he was giving up by pleading guilty and what he would receive in return for his plea. After pleading not guilty to the charge listed on his indictment (murder), Cavitt pled guilty in open court to the lesser crime of manslaughter as offered by the State:
*1224 BY MR. TURNER [District Attorney]: Judge, [Cavitt]’s entering a plea on manslaughter.
BY THE COURT [to Cavitt]: You are pleading guilty to the crime of manslaughter; is that right?
BY MR. YOUNG: Yes, sir.
BY THE COURT [to Cavitt]: Is that what you are pleading guilty to?
BY THE DEFENDANT [Cavitt]: Yes, sir.
¶ 11. Both Young and the attorney for the State clarified for the judge, on the record, the plea agreement reached by the parties. If Cavitt had not heard about it up until this point, he should have said something before simply pleading guilty to manslaughter. This plea hearing transcript clearly does not parallel the claims by Cavitt that he did not know anything about the plea agreement with the State and that he did not accept it on his own. In addition to this testimony by Cavitt, the petition to plead guilty to manslaughter, signed by Cavitt, reads as follows:
State what sentence the State will recommend, if any to your knowledge, on your Plea of guilty. [Written by Cavitt:] Manslaughter, 20 yrs, 10 yrs suspended....
Has anyone ever indicated or told you the State’s recommendation would be less? [Written by Cavitt:] No.
Are you pleading guilty because you are guilty and for no other reason? [Written by Cavitt:] Yes.
¶ 12. This testimony and written documentation are uncontroverted proof that Cavitt was aware of the plea agreement and chose to accept it. The plea hearing transcript also indicates that Cavitt understood and was mindful of the rights that he would be waiving by pleading guilty and that he was satisfied with Young’s services. Therefore, it cannot be said that Cavitt did not plead guilty voluntarily, knowingly and intelligently as required by law. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). As such, the court was correct in accepting Cavitt’s guilty plea as valid and that guilty plea served to waive Cavitt’s right to a trial and also to his right against self-incrimination which he attempts to argue was violated here.
¶ 13. We find that Cavitt’s claims against his attorney are without merit. We are not convinced that Cavitt has met the standard set out in the Strickland test. In Ellzey v. State, the court ruled that “the constitutional requirement of effective assistance of counsel does not require or permit the court upon a subsequent review to analyze counsel’s mental processes in order to determine whether every conceivable avenue of evidence has been totally explored and every possible theory of defense has been pursued.” Ellzey v. State, 196 So.2d 889, 892 (Miss.1967). As such, from everything provided to this Court for review, we find that Young conveyed satisfactory assistance and counsel to Cavitt throughout the course of this case. We are not convinced that the outcome of this case would have been different but for Young’s mistakes because we do not find any evidence of any egregious errors made by Young in his pursuit of Cavitt’s defense. See King v. State, 738 So.2d 240, 241 (Miss.1999); Taylor, 682 So.2d at 363 (both stating that the reviewing court must find that the outcome of the case would have been different but for counsel’s errors).
¶ 14. As to the issue of the alleged illegal forfeiture of $1655 in drug proceeds, we find no merit. First, we find no evidence in the record of this alleged forfeiture. Further, it is admitted by Cavitt in his brief that this alleged illegal forfeiture had nothing whatsoever to do with the case before this Court, nor was it listed in the indictment for the murder charge against Cavitt, thereby negating the possibility of double jeopardy here. The Mis *1225 sissippi Supreme Court in State v. Fleming ruled that, because the forfeiture in that case did not result from the same crime for which the defendant had been indicted, it would not give rise to a second prosecution for the same crime. State v. Fleming, 726 So.2d 113, 114 (Miss.1998). Cavitt’s assertions are completely off-base here. The double jeopardy clause has not been invoked in this case and, yet again, Cavitt has given this Court no evidence which would substantiate his claims.
¶ 15. Moreover, in order for the double jeopardy clause to attach to any action, “the accused must first suffer an actual acquittal or conviction on the merits of the offense. Then, and only then, will a second prosecution for that same offense be barred.” Id. at 115 (emphasis added). By this, the court meant that a defendant must be subjected to a “criminal trial.” Id. Cavitt pled guilty. While that is technically considered a “conviction,” the merits of Cavitt’s case were never heard in a criminal trial either by a judge or a jury because he gave up his right to trial. Cav-itt is therefore not in danger of double jeopardy and he has no claim as to this issue, illegal forfeiture or not.
¶ 16. Much of Cavitt’s problem in his case for post-conviction relief before this Court is that he has provided no evidence with which we could begin to give consideration to his claims. Without such proof of the matters he asserts, we can do nothing to help him. As noted by the Mississippi Supreme Court in Mason v. State, 440 So.2d 318, 319 (Miss.1983):
We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere [the appellant or appellee] may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY DENYING POST CONVICTION RELIEF, IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.