United States Court of Appeals
Fifth Circuit

**F I L E D**

April 27, 2005

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————————————

No. 04-60103

————————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

CHARLES HARRIS,

Defendant - Appellee.

————————————————————————————

Appeal from the United States District Court
For the Norther District of Mississippi
(No. 1:99-CR-122-1-B)

————————————————————————————

Before JOLLY, DAVIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The appellee, a police captain, was convicted of federal civil rights violations for excessive use of force with a police baton on an intoxicated suspect. The district court granted the appellee's habeas petition for ineffective assistance of counsel, vacating the sentence and granting a new trial. The government appeals, and we reverse and reinstate the sentence.

## FACTS AND PROCEDURAL HISTORY

On May 9, 1998, the defendant-appellee, Charles Harris, serving as Chief of Police for Golden, Mississippi (population 220), investigated a noise complaint at a party in a local neighborhood. After their two warnings went unheeded, Harris and three other officers returned to

the party and began arresting patrons. Harris arrested Geraldo Lopez for public drunkenness, and placed him handcuffed in the back of the patrol car. A few minutes after Harris put Lopez in the car, Harris opened the car door and was kicked by Lopez. Harris responded by immediately striking Lopez in the shins with his police baton.

Thinking Lopez was subdued, Harris closed the car door again. Lopez began thrashing his legs and body around the car and banging his head against the plexiglass divider between the front and back seats. Harris again opened the door and began beating Lopez with the baton. Officer Flynt, who testified for the government, stated that Harris struck Lopez in the head. Officer Stacy, who also testified for the government, stated that she stepped in and tried to restrain Harris because he "had lost his composure as a law enforcement officer." *United States v. Harris*, 293 F.3d 863, 868 (5th Cir. 2002) (detailing factual background). Officer Trimm, who ducked into the patrol car and tried to stop Lopez from banging his head against the plexiglass, testified that he did not see Harris hit Lopez, but did see blood coming from Lopez's forehead. Lopez kicked Trimm in the groin and Trimm sprayed Lopez with pepper spray in an attempt to subdue him. Officer Kemp, who arrived at the scene after the altercation, testified that Harris bragged to him that he had severely beaten Lopez. *Id.* Gary Pounders, who lived in the neighborhood, testified for the defense that he did not think Harris hit Lopez in the head, but corroborated much of the remaining government testimony.

The FBI conducted a non-custodial interview with Harris after the incident, and the interviewing agent, Agent Summerlin, testified that Harris admitted hitting Lopez in the head and complained that the FBI had to do something to control the problem of Mexicans in the United States. Harris was then indicted, tried, and convicted of violating 18 U.S.C. § 242, a statute prohibiting government officials from violating a citizen's civil rights. Finding that a downward

departure was warranted, the district court sentenced Harris to 13 months of imprisonment.[1] A panel of this Court affirmed the conviction, but found the extent of the downward departure to be excessive, and remanded for re-sentencing. *Id*. at 876. The district court re-sentenced Harris to 15 months imprisonment. Harris then filed a motion for post-conviction habeas relief in the district court under 28 U.S.C. § 2255, arguing that his conviction and sentence should be vacated because he received ineffective assistance of counsel.[2] After a hearing in which Harris presented eight witnesses and the government called Harris's trial counsel, J. Dudley Williams, as its sole witness, the district court granted Harris's motion, vacated his sentence, released him from custody, and ordered him retried.[3] The United States took this appeal.

## STANDARD OF REVIEW

Ineffective assistance of counsel is a mixed question of law and fact that this Court reviews de novo. *Sayre v. Anderson,* 238 F.3d 631, 634–35 (5th Cir. 2002). Unless clearly erroneous, this Court credits "the trial court's express or implied findings of discrete, historic facts." *Id*.

---

[1] 18 U.S.C. § 242 provides in pertinent part:

Whoever, under color of any law . . . willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon . . . shall be fined under this title or imprisoned not more than ten years, or both . . . .

[2] Harris selected his own lawyer, who had over twenty years of experience as a defense attorney, to represent him at trial. The district court stated in its order granting habeas relief that from its observation it found that Williams was a "competent attorney."

[3] At the habeas hearing, Harris himself testified, as well as his wife and all of the witnesses who he claims should have been called at trial to testify on his behalf. It is also noteworthy that the trial judge also served as the habeas district court judge in this case.

3

**ANALYSIS**

A federal habeas petitioner who alleges ineffective assistance of counsel must show that his counsel's performance was deficient and that this deficient performance resulted in actual prejudice. *Strickland v. Washington.* 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*.

To establish prejudice under *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Harris asserted two instances of ineffective assistance: (1) the defendant's counsel failed to call witnesses to rebut the government's evidence that Harris was a racist; and (2) the defendant was not allowed by his counsel to testify in his own defense.[4] We discuss each issue in turn.

_____

[4] Harris also argued that his counsel failed to put before the jury the past conviction record of the accuser on cross-examination, and that his counsel failed to notify the court of information regarding potential jury bias. We find these arguments to be without merit. As to the first issue, none of Lopez's past crimes could be used to attack his credibility because they were mere misdemeanors, not crimes involving dishonesty. Regarding the second issue, Williams's testimony that he was never informed of juror bias, and would have informed the district court had he been so informed, is plausible. Furthermore, these issues were not relied on by the district court in its finding of ineffective assistance. We therefore decline to address them.

4

A.       *Failure to Call Character Witnesses*

Harris argued in his motion for habeas relief that his counsel was constitutionally ineffective in calling only one witness on his behalf—Gary Pounders[5]—and failing to call several witnesses who were in the courtroom and ready to testify.[6] While none of the potential witnesses saw the altercation with Lopez, Harris asserts they would all testify that Harris was honest, of good moral character, and was not bigoted against Mexicans or otherwise racist. In its order granting habeas relief, the district court reasoned that because the evidence regarding how Lopez suffered his head injuries was close (between banging his head against the plexiglass or Harris's baton),[7] the government's evidence painting the defendant as a racist was important to its case against Harris, and therefore "critical" in determining whether ineffective assistance occurred. The district court concluded that Williams's failure to call these witnesses to rebut the government's charges of racism "constituted ineffective assistance as that term is defined in the case law."

Because deciding whether to call witnesses is a strategic trial decision, this Court has held that complaints of uncalled witness are "disfavored" as a source of *Strickland* habeas review. *See Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir. 1990); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)

---

[5] Pounders observed part of the altercation between Harris and Lopez, and testified that he saw Harris strike Lopez on the leg but not the head.

[6] In his petition for habeas relief, Harris listed the following potential witnesses: Roy Bethune, David Ginn, Edmundo Sanchez, Irene Warren Byrd, Rhonda Boyd, and Tonya Jenkins.

[7] The district court quoted language from the this Court's opinion stating:

Arguably, the trial testimony gives equal or nearly equal circumstantial support to the theory that Lopez's head laceration and hematoma were caused by Lopez's banging his head against surfaces in the car rather than by Harris's striking Lopez.

*Harris*, 293 F.3d at 870 n.6

(citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981)). We hold that Williams's decision not to call these witnesses was not "objectively unreasonable" for various reasons. First, none of the witnesses would have been able to testify to anything relevant to Harris's guilt or innocence. In order to convict Harris, the jury had to find that his acts either (1) resulted in bodily injury to Lopez or (2) involved the use of a dangerous weapon. Williams, faced with this charge, had to make a strategic choice in which witnesses he would call. Other than Pounders, only one witness with any direct knowledge of the incident, Bethune, could testify regarding blood on the plexiglass. There was already testimony and evidence on this point, and Bethune's additional testimony would do nothing to counter the ample evidence that Harris had used a dangerous weapon. Also, if called, Bethune would have likely been questioned about Harris's "wetback" statement (which Bethune overheard), something that Williams understandably wanted to avoid. Therefore, Williams's decision to not call Bethune was not objectively unreasonable. Further, even if Williams objectively should have called Bethune, Harris was not prejudiced because the government could have convicted him with the ample evidence that he used a dangerous weapon.[8]

Harris argues that the failure to call the character witnesses was objectively unreasonable

---

[8]Affirming the trial court's conviction of Harris, this Court stated that:

> Because there was sufficient evidence that Harris used a "dangerous weapon" in committing the assault, we can affirm this conviction under section 242 without deciding whether the Government proved that Harris caused "bodily injury" to Lopez or the scope of his "bodily injury" as used in section 242. The jury was presented with sufficient evidence to conclude that Harris struck Lopez in the head with a dangerous weapon, the police baton, and that this action constituted excessive force under the circumstances. These elements are sufficient to sustain Harris's conviction under Section 242.

*Harris*, 293 F.3d at 870–71.

6

because the government's case was built on Harris's alleged racism, and therefore the character evidence to rebut the allegations was important. We disagree. Harris was not charged with a hate crime, and animus toward Mexican-Americans was not an element of the charged offense. It is true that the government did rely somewhat on the evidence of Harris's apparent racism in its case against Harris, but this reliance was relatively insignificant to the offense charged. The evidence of racist remarks Harris allegedly made to the FBI agent, the EMT, and to the police dispatcher was used by the government to buttress its claim that Harris's conduct was willful. However, the government had ample additional evidence to establish willfulness. In its closing argument, the government stated to the jury that in determining whether Harris intended to use excessive force against Lopez, it should first try to infer Harris's intent from his conduct, that is: beating a handcuffed man in the head with a nightstick. The government then asked the jury to consider that Harris asked other officers to bring their night sticks even though there was no indication that there would be serious trouble. Next the government pointed to Harris's boastful statements to other officers following the incident. Finally, the government pointed to his derogatory statements about Mexicans as evidence of willfulness. Evidence of Harris's racist comments was certainly not a cornerstone of the government's case against him. It was not objectively unreasonable for defense counsel to fail to call character witnesses to rebut the allegations of racism. We credit the government's argument that any character testimony that Harris was an "honest person" could lead the jury to think his racist comments were a reflection of his true feelings. Furthermore, cross-examination would have allowed the government to further emphasize the undeniable fact that Harris made racist slurs against Mexicans in a callous manner and on more than one occasion. Finally, we note that even if counsel should have called these witnesses, we are unconvinced that the outcome of the trial would have been different had the jury heard this

7

evidence of peripheral relevance.

Harris was not deprived of effective assistance of counsel by Williams's decision to omit Bethune's testimony, which was at least somewhat relevant to whether Lopez's injuries were caused by Harris's acts or Lopez's head-banging. Because other witnesses had testified that there was a large amount of blood on the plexiglass, Bethune's testimony would have been merely cumulative. This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel. *Murray*, 736 F.2d at 282. Williams's decision to decline to call Bethune is even more reasonable considering that Bethune heard Harris's "wetback" comment, something Williams likely knew the government would elicit on cross-examination. This Court has recognized that the value of character witnesses must be "assessed on a basis which assumed that they would testify favorably to [the defendant's] character." *Gray v. Lucas*, 677 F.2d 1086, 1094 (5th Cir. 1982). The decision to limit the defense's case to the sole eye witness (Pounders) who could refute the government's evidence on the merits, while declining to call witnesses with cumulative and irrelevant testimony does not amount to ineffective assistance under *Strickland*. The district court erred in finding that the failure to call these witnesses amounted to ineffective assistance under *Strickland* and in granting Harris habeas relief.

B.      *Not Calling Harris to Testify on His Own Behalf*

The district court also concluded that Harris received ineffective assistance of counsel because he was not allowed to testify on his own behalf. At the conclusion of the defense's case during Harris's trial, the district court excused the jury and asked defense counsel if he wanted to put something on the record about Harris's decision not to testify. Williams then turned to Harris and asked him in open court if it was correct that he did not want to testify. Harris replied: "That's

8

correct." The district court on habeas review held that this "leading question and answer" could not amount to a sufficient "waiver" of Harris's right to testify on his own behalf. The district court reasoned that this leading exchange would not be sufficient to waive one's right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966), or to waive one's right to a jury trial. The district court further found credible and compelling Harris's and his wife's testimony at the habeas hearing that Harris told his lawyer that he wanted to testify, but was told "[n]o, there is no need. We've got this case won." Without a clear indication that Harris waived his right to take the stand, and considering the testimony at the habeas hearing, the district court found that Harris suffered ineffective assistance of counsel.

The district court's ruling on this issue notably omitted any discussion of *Strickland*, such as why Williams's decision to counsel against Harris testifying was "objectively unreasonable" or how it prejudiced Harris. A defendant who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*, however. *Mullins,* 315 F.3d 449, 452 (5th Cir. 2002); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001). A criminal defendant's right to testify is well established, and only the defendant can waive this right, not his counsel. *Mullins*, 315 F.3d at 452. That waiver must be knowing and voluntary. *Id*.

In *Mullins*, as in this case, the district court granted habeas relief on this issue. This Court held in *Mullins* that the district court did not clearly err in finding the attorney's actions "objectively unreasonable," but reversed on application of the second *Strickland* prong, concluding that the defendant could not show that he was prejudiced by his attorney's failure to call him as a witness. *Id.* at 456. Considering that all or much of Mullins's testimony was in the record elsewhere, in addition to the potential damage that the government could elicit on cross-examination, Mullins could

9

not show how his testimony probably would have changed the outcome of his case. *Id*.

Similarly, all or much of Harris's testimony was elsewhere in the record. In his testimony at the habeas hearing, Harris stated he would have testified that he did not hit Lopez in the head, that Lopez's injuries came from his banging his head against the plexiglass, that he did not make the statements attributed to him by the FBI, and that he was not a racist. Williams, however, was able to put ample evidence in the record suggesting that Harris did not strike Lopez in the head, such as Pounders's testimony and the cross-examination of the other officers. Furthermore, putting Harris on the stand probably would have done more harm than good, in that because Harris admitted to making the "wetback" comment, the jury would likely have discounted any of his other testimony about not being a racist. In addition, Harris's track record of testifying indicated he would make a remarkably bad witness for himself, as evidenced by his poor performance at the hearing to suppress the statements he made to the FBI, where the district court found that Harris's testimony was "not credible."

Harris's failure to testify did not unduly prejudice his case. Harris would not have offered any direct evidence concerning the altercation outside of the evidence already adduced from Pounders's testimony and the cross-examination of the government's witnesses. Therefore, the value of his testimony would have been in persuading the jury that he was not a racist. As we discussed earlier, however, racism was not an element of his offense, notwithstanding the government's *de minimis* reliance on the racist comments as evidence of intent. Furthermore, Harris would have been subject to rigorous cross-examination. Harris has not shown that he was prejudiced by not testifying.

## CONCLUSION

The district court erred in concluding that Harris received ineffective assistance of counsel.

10

The grant of habeas corpus is REVERSED and Harris's sentence is REINSTATED. The case is REMANDED to the district court for further proceedings and orders not inconsistent with this opinion, if same are necessary.