ROBERTS, J.,
 

 for the Court:
 

 ¶ 1. Following his conviction of child molestation and sentence as a habitual offender of life imprisonment in the custody of the Mississippi Department of Corrections (MDOC), Bobby Didon filed a motion for post-conviction relief in the Circuit Court of Lawrence County, claiming ineffective assistance of counsel. Didon’s motion was denied. Aggrieved by this ruling, Didon appeals. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. Didon was indicted by a Lawrence County grand jury on December 16, 2003, for the crime of touching, handling, and fondling a nine-year-old girl. Following that, Didon was convicted by a jury of child molestation. Didon waived a presen-tence investigation and was sentenced to life imprisonment without parole pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2007) because of his status as a habitual offender. Didon had previously been convicted on two counts of sexual battery, indecency with a child, and grand larceny.
 

 ¶ 3. Didon filed a notice of appeal with the Mississippi Supreme Court on April 13, 2006, but he later filed a motion for a voluntary dismissal on August 24, 2006, when it “became clear that a direct appeal was not supported by the trial record or the post-trial record.” The Mississippi Supreme Court granted the motion on September 12, 2006. Didon then filed a motion for post-conviction relief pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act, Mississippi Code Annotated section 99-39-1 to-29 (Rev.2007) on July 12, 2007. Following an evidentiary hearing, Didon’s motion for post-conviction relief was denied on May 5, 2008. Didon now appeals that decision.
 

 STANDARD OF REVIEW
 

 ¶ 4. Ineffective assistance of counsel is a mixed question of law and fact that this Court reviews de novo.
 
 Sayre v. Anderson,
 
 238 F.3d 631, 634-35 (5th Cir. 2001). Unless clearly erroneous, this
 
 *980
 
 Court credits “the trial court’s express or implied findings of discrete, historic facts.”
 
 Id.
 
 at 635.
 

 ¶ 5. A petitioner who alleges ineffective assistance of counsel must show that his counsel’s performance was deficient
 
 and
 
 that this deficient performance resulted in actual prejudice.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “Stated somewhat differently, the defendant must prove that ‘the lawyer’s errors were of such a serious magnitude as to deprive the defendant of a fair trial because of a reasonable probability that, but for counselor’s unprofessional errors, the results would have been different.’”
 
 Cole v. State,
 
 666 So.2d 767, 775 (Miss.1995) (quoting
 
 Martin v. State,
 
 609 So.2d 435, 438 (Miss.1992)). Furthermore, judicial scrutiny of counsel’s performance must be “highly deferential,” and the court must make every effort “to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s alleged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Strickland,
 
 466 U.S. at 669, 104 S.Ct. 2052. There is a “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance....”
 
 Id.
 

 ¶ 6. Didon’s motion claims that his trial counsel, Dwayne Deer, provided him ineffective assistance of counsel. His primary assertions to support this accusation are that Deer failed to interview witnesses, failed to view a video that was taken at the Children’s Advocacy Center during an interview with the child victim, and failed to visit the home where the events occurred. In response, the State asserts that Didon’s appeal is barred because the trial court lacked jurisdiction to hear Didon’s motion because Didon did not request leave by Mississippi Supreme Court prior to his filing the post-conviction relief motion in the circuit court. Additionally, the State claims that Didon is procedurally barred because he failed to place an adequate record before this Court. Because jurisdiction is a fundamental prerequisite in any proceeding, this Court will address that issue first.
 

 ANALYSIS
 

 I. PROCEDURAL BAR
 

 ¶ 7. Relying on
 
 Lyons v. State, 881
 
 So.2d 373 (Miss.Ct.App.2004), the State asserts that Didon’s appeal should be dismissed because Didon was not granted leave by the Mississippi Supreme Court to file his motion for post-conviction relief in the circuit court. However,
 
 Lyons
 
 is distinguishable from the case at hand. In
 
 Lyons,
 
 the appellant filed an appeal following his trial, but he withdrew the appeal as part of a plea agreement wherein two counts of sale of a controlled substance were dropped.
 
 Id.
 
 at 375(¶ 3). About a year later, Lyons filed a motion for post-conviction relief, but the trial judge ruled that Lyons could not proceed in the trial court because “authority to do so had not been granted by the supreme court pursuant to Mississippi Code Annotated [s]ection 99-39-7.”
 
 Id.
 
 at 375(¶4). The supreme court affirmed stating, “Lyons’[s] motion for post-conviction relief is procedurally barred [because] [t]he dismissal of his direct appeal from the supreme court was a final judgment.”
 
 Id.
 
 at 376(¶ 9). Regarding Lyons’s direct appeal, the supreme court issued a mandate from the direct appeal stating that there had been proceedings in the supreme court and the court had issued a “final judgment.”
 
 Id.
 
 Because the facts in
 
 Lyons
 
 are somewhat different from the case at hand, this Court finds that
 
 Martin v. State,
 
 556 So.2d 357 (Miss.1990) provides a more thorough explanation of the jurisdictional directive of Mississippi Code Annotated section 99-39-7 and is applicable to the case at hand.
 

 
 *981
 
 ¶ 8. Stemming from the revocation of his probation, the defendant in
 
 Martin
 
 filed a direct appeal to the Mississippi Supreme Court.
 
 Martin,
 
 556 So.2d at 357. The State then filed a motion to dismiss Martin’s appeal arguing that an order revoking probation was not directly appealable.
 
 Id.
 
 The court granted the motion without prejudice so Martin could institute post-conviction relief action.
 
 Id.
 
 Following the dismissal of the direct appeal, Martin initiated post-conviction relief proceedings in the supreme court, but the court determined that the post-conviction proceedings should be dismissed because Martin had filed his petition in the wrong court.
 
 Id.
 
 The supreme court stated, “[w]hen we dismissed Martin’s direct appeal ... without prejudice to institute post-conviction proceedings ... we did not direct in which court said proceedings should be initiated. We assumed that the jurisdictional directive of section 99-39-7 would be followed, and furthermore, that it would be clear.”
 
 Id.
 
 at 358. Recognizing that the jurisdictional directive of section 99-39-7 must have needed clarification, the court explained as follows:
 

 Section 99-39-7 of the Post-Conviction Relief Act sets forth the circumstances in which a motion for relief under the Act must be filed originally in the trial court and in what circumstances the motion must first be filed in the Supreme Court of Mississippi. The only time that the motion must first be filed in this Court is when “the prisoner’s conviction and sentence have been appealed to the [Sjupreme [Cjourt of Mississippi and there affirmed or the appeal dismissed. Where the conviction and sentence have been affirmed on appeal or the appeal has been dismissed, the motion under this chapter shall not be filed in the trial court until the motion shall have been presented to a quorum of the justices of the [Sjupreme [C]ourt of Mississippi,”....
 

 [[Image here]]
 

 [O]ne could argue that by dismissing Martin’s direct appeal, ... this Court thereby became the last court to exercise jurisdiction in this cause and should, therefore, be the court of first resort for Martin’s post-conviction petition.
 

 However, implicit in the scheme of the Post-Conviction Relief Act is the requirement that in order for this Court to acquire exclusive, original jurisdiction over a petition filed thereunder,
 
 this Court must have previously made some final determination going to the merits of the underlying conviction and sentence. It is not enough to confer exclusive jurisdiction on this Court under [section
 
 ]
 
 99-39-7 that tve dismissed an appeal without prejudice
 
 for lack of jurisdiction, and incident to attempted post-conviction proceedings, that we granted a temporary stay of execution.
 

 [[Image here]]
 

 The actions taken by this Comt in this cause have been merely procedural in nature, and have in no way touched on the merits of Martin’s conviction and sentence.
 

 Id.
 
 at 358-59 (emphasis added). Didon’s situation is similar.
 

 ¶ 9. After filing his notice of appeal, Didon determined that a better course of action was to seek redress via a post-conviction relief motion. Didon then filed a motion for voluntary dismissal with the Mississippi Supreme Court. The dismissal was granted on September 12, 2006, pursuant to Mississippi Rule of Appellate Procedure 42(b). There is nothing in the record indicating that the supreme court made any decision based upon the merits of Didoris case, nor was the case dismissed by the court for any procedural defects such as failure to file within the statute of limi
 
 *982
 
 tations. The dismissal notice merely states that “[p]ursuant to [Mississippi Rule of Appellate Procedure] 42(b),
 
 [1]
 
 appellant’s Motion for Voluntary Dismissal of Appeal is granted. Costs are taxed to the appellant.”
 
 [2]
 
 Also, there is nothing in the record to indicate that Didon withdrew his appeal on the basis of a plea agreement, or that it was dismissed by the supreme court for filing it in the wrong court. The supreme court’s actions in this matter were merely procedural. Therefore, just as the trial court in
 
 Martin
 
 had exclusive original jurisdiction to hear the post-conviction relief motion, so did the circuit court in this case when it held an evidentiary hearing and ruled on Didon’s post-conviction relief motion.
 
 See Martin,
 
 556 So.2d at 359-60. Therefore, the State’s claim that the circuit court lacked jurisdiction fails.
 

 II. INEFFECTIVE ASSISTANCE OF COUNSEL
 

 ¶ 10. Didon asserts that Deer failed to interview witnesses in preparation for trial. In addition, he takes issue with the fact that Deer did not elicit testimony from certain family members during the trial. In an attempt to support this assertion, Didon submits deposition transcripts of three of his family members that were taken in preparation for Didon’s motion for post-conviction relief. The family members deposed were Didon’s sister, Kay Col-vin (Kay), his brother-in-law, William Col-vin (William), and his wife, Nora Didon (Nora). We will address each of them in turn.
 

 A. Kay Colvin’s Testimony
 

 ¶ 11. Didon contends that the jury would have been swayed by Kay’s testimony relating to the victim’s interview with the Child Advocacy Center in McComb, Mississippi. Kay stated that she believed the victim was coaxed by her mother prior to the interview at the Child Advocacy Center about what she should say during that interview. In her post-trial deposition, Kay stated that although she voiced these concerns to Deer, she did not believe he followed up on her perceptions related to the events of that day. Didon asserts that Kay should have been allowed to present her opinions to the jury. However, it is impossible for this Court to scrutinize Deer’s performance relating to that interview because Didon has not furnished this Court with a transcript of the trial below to determine what testimony was given or what questions or objections were, or should have been, raised related to the child’s interview at the Child Advocacy Center.
 

 ¶ 12. Furthermore, when deciding whether or not to place Kay on the stand, Deer had the responsibility of determining what the best trial strategy would be. Supported by Kay’s own statements, Deer had to weigh any possible benefit of Kay’s testimony against the risk. Kay’s post-trial deposition reveals that she had accompanied the victim’s mother to press charges against Didon, and even more disparaging, she later offered the victim’s mother money for the child as an incentive to drop the charges against Didon. Kay avers that Didon had told her to do this based upon Deer’s advice, but there is no way to discern the validity of this statement from the record.
 

 ¶ 13. Additionally, Kay states that Deer failed to communicate with her, Didon, and
 
 *983
 
 other potential witnesses. However, Kay’s deposition reveals information somewhat contradictory to this allegation. Kay testified that she accompanied Didon to Deer’s office on
 
 “numerous occasions,”
 
 and she sometimes attended the meetings “back [in] the office.” Although Didon may feel as if these encounters were too few, it is not for this Court to determine how many interviews would or would not have been sufficient based upon hindsight and one-sided accounts of what preparation took place. While represented by Deer, two years elapsed between the time of Didon’s indictment and his trial. If Didon sensed that neither he nor other witnesses were being interviewed or prepared adequately, he had the opportunity to seek other counsel.
 

 ¶ 14. Because deciding whether to call witnesses is a strategic trial decision, the Fifth Circuit Court of Appeals has held that “complaints of uncalled witness[es] are ‘disfavored’ as a source of
 
 Strickland
 
 ... review.”
 
 United States v. Harris,
 
 408 F.3d 186,190 (5th Cir.2005) (citations omitted). We agree. Furthermore, “counsel’s [choice of whether or not] to file certain motions, call certain witnesses, ask certain questions, and make certain objections fall[s] within the ambit of trial strategy.”
 
 Cole,
 
 666 So.2d at 777. In light of case law and the facts stated above, this Court finds that Deer’s decision not to call Kay was not objectively unreasonable, and certainly, it was within the ambit of trial strategy.
 

 B. William Colvin’s Assertions
 

 ¶ 15. Just as with Kay, any possible testimony by William, Didon’s brother-in-law, may have been suspect. William testified in his post-trial deposition that everything he knew about the Didon home and the events surrounding the incident came from Didon, not from any firsthand knowledge or experience. Deer may not have called William because William’s testimony likely would not have been admissible as it was hearsay. William also declares that after Didon’s trial, Deer confessed that his advocacy was deficient and that Didon could file a motion asserting ineffective assistance of counsel. William’s allegation alone is insufficient to support a finding that Deer actually confessed that he had inadequately represented Didon. There are nearly thirty pages of testimony from William about what he heard from Didon or Kay concerning the events, but there is nothing in the record that indicates that Deer has been questioned or given an opportunity to defend or explain his performance. Nor is there a transcript from the trial or the evidentiary hearing included in the record that would allow this Court to analyze the prior proceedings and Deer’s performance. Furthermore, even Didon recognized that the transcript from the trial would not support a successful appeal.
 

 ¶ 16. Just as there would have been legitimate doubt with any testimony Kay that could have given, it is unlikely that the jury would have been persuaded to find differently if William had testified. As stated, William’s post-trial deposition reveals that he had no personal or firsthand knowledge of the events surrounding the incident. The circuit judge correctly stated in his order denying Didon’s motion for post-conviction relief, “[such] statements ... [would have been] offered by persons related either by blood or marriage ... [and][h]ad the jury been presented this information, they would have been aware of possible bias and inconsistencies found within these statements.”
 

 ¶ 17. Based upon the post-trial depositions, Didon’s assertion of ineffective assistance of counsel fails to pass the
 
 Strickland
 
 two-prong test. Under
 
 Strickland,
 
 Didon has the burden of proof to show that
 
 *984
 
 his attorney’s performance was deficient, and he must show that such deficiency was prejudicial to the defense.
 
 See Moody v. State,
 
 644 So.2d 451, 456 (Miss.1994). Also, as the supreme court has stated, “[t]here is ... a presumption that counsel’s decisions are strategic in nature, rather than negligent.”
 
 Swington v. State, 742
 
 So.2d 1106, 1114(¶ 23) (Miss.1999). It is not evident that, but for Deer’s decision to abstain from using Kay or her husband as witnesses, the outcome
 
 of
 
 the trial would have been different or that Deer’s decisions stemmed from anything other than trial strategy.
 

 C. Nora Didon’s Testimony
 

 ¶ 18. This leaves the issue of what Nora “could have” testified about at trial. Uncontradicted by Didon, the State’s brief to this Court states that Nora testified during the trial as follows: “that the victim and the defendant were in the bedroom together, that she was cooking in the kitchen most of the time while the victim was there, and that the victim visited her home on numerous occasions and she could not remember each visit.”
 
 [3]
 
 Di-don now claims that his wife was shy and would not have spoken forthrightly on her own during the trial. To reiterate, Didon has not provided this Court with a transcript of the trial in which to analyze whether Nora was questioned appropriately at trial or not, or whether she appeared hesitant in her answers. Furthermore, Didon has not shown this Court that Nora was denied the opportunity to testify accurately about what she knew about that day, or that she was inadequately questioned during the trial. Moreover, in his order denying Didon’s motion for post-conviction relief, the circuit judge stated, “[he] knew [the trial judge] to be a learned judge and [was] confident that had this attorney displayed such inability to rise to the level of undue prejudice against the Defendant, the presiding Judge would have acted accordingly.” It stands to reason that such a learned judge would have noticed if Nora was not responding properly to questions and whether she acted appropriately.
 

 ¶ 19. Nora now wants to change her testimony. In her post-trial deposition, she stated that because of the layout of the home, she would have been able to see into the bedroom every time she went anywhere in the house. She testified in the deposition that she was “up and down all the time,” and “[e]ven if [she] went into the kitchen, [she] was only there a minute .... ” As stated, the record does not support the assertion that Nora was denied the opportunity to give a precise account at trial. If Nora was given the opportunity to testify again she would vouch for her husband by stating that she was present and that she knew that no molestation had occurred. Although this
 
 *985
 
 Court cannot divine which of Nora’s testimonies are accurate, Didon is not entitled to another bite at the apple because his witness failed to give complete and truthful testimony at trial.
 

 ¶ 20. Didon also takes issue with the fact that Deer did not visit the home where the incident occurred, nor did he ask Nora to create a drawing of the home, which could have been shown to the jury. Given the nature and content of Nora’s testimony, it is not persuasive that any such drawing would have affected the outcome of the trial.
 

 ¶ 21. To prevail in his ineffectiveness argument, “[a] defendant ... must ... state with particularity what the investigation would have revealed and specify how it would have altered the outcome of trial ... [or] how such additional investigation would have significantly aided his cause at trial.”
 
 Cole,
 
 666 So.2d at 776 (internal citations and quotations omitted). Although Didon has “particularly” stated that he believes that his wife should have been questioned differently and his relatives allowed to testify at trial, this Court is not persuaded, based upon the evidence presented in the post-trial depositions, that Didon was prejudiced by Deer’s decisions.
 

 ¶ 22. “Hindsight ... is always 20/20. It is easy to criticize counsel with the aid of ‘backfocal’ lenses.”
 
 Id.
 
 But, mere hindsight judgment does not provide a window of opportunity to retry a case.
 
 Id.
 
 When ruling on Didon’s post-conviction relief motion, the circuit judge stated that “[w]hile Deer’s performance might not have been as good as it could have been, it [is] very suspect that it actually reaehe[d] the level of incompetency. Even though deficient, ... Deer’s actions did not reach a level of prejudice to be deemed outcome determinative.” As this Court has stated, a trial court’s denial of a motion for post-conviction relief should not be reversed “absent a finding that the trial court’s [decision] was clearly erroneous.”
 
 Holland v. State,
 
 956 So.2d 322, 325(¶ 6) (Miss. Ct.App.2007) (citation omitted). Based upon the record and applicable case law, this Court finds that Didon has failed to meet his burden under
 
 Strickland
 
 to show that Deer’s performance was deficient and that deficiency prejudiced his defense. Accordingly, this Court affirms the judgment of the circuit court.
 

 ¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF LAWRENCE COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . Mississippi Rule of Appellate Procedure 42(b) states, "[ajfter the appeal has been docketed with the clerk of the Supreme Court, an appeal may be dismissed on motion of the appellant upon such terms as may be agreed upon by the parties or fixed by the Supreme Court....”
 

 [2]
 

 . The case number of Didon’s direct appeal to the supreme court is 2006-KA-00629-SCT.
 

 [3]
 

 . As staled, the record does not include a transcript of the trial or the evidentiary hearing from which to test the information set forth in the parties’ briefs. As this Court has clearly stated, ''[a]s with any appeal, it is solely the appellant's duty to ensure that the record is sufficiently populated to support the error claimed. [And][i]f the record is found lacking in this regard, the lower court’s order must stand.” Ross
 
 v. State,
 
 936 So.2d 983, 985(¶ 4) (Miss.Ct.App.2006) (internal citations omitted). Accordingly, if there was an inaccurate representation of Nora's trial testimony, it was incumbent upon Didon to refute the appellee's account of Nora’s trial testimony in a reply brief or, better yet, by providing a transcript of the actual trial. However, we remind the appellee that it too has a duty to provide necessary portions of the record if it deems them necessaiy. Mississippi Rule of Appellate Procedure 10(b) provides that "the appellee shall, within 14 days after the service of the designation and the statement of the appellant, file with the clerk and serve on the appellant and the court reporter a designation of additional parts to be included.”