WR-83,168-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/28/2015 3:59:59 PM
Accepted 4/29/2015 8:53:09 AM
ABEL ACOSTA
CLERK

**WR-83,168-01 & WR-83,168-02**

**IN THE**
**COURT OF CRIMINAL APPEALS**
**OF TEXAS**

RECEIVED
COURT OF CRIMINAL APPEALS
4/29/2015
ABEL ACOSTA, CLERK

| | | |
|---|---|---|
| **EX PARTE** | § | **IN THE CRIMINAL** |
| | § | |
| | § | **DISTRICT COURT OF** |
| | § | |
| **LEANN WALLACE** | § | **JEFFERSON COUNTY, TX** |

**APPLICANT'S OBJECTIONS TO THE TRIAL COURT'S**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**TO THE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

Applicant, LEANN WALLACE, by and through her attorney, Stanley G. Schneider, files these objections to the trial court's findings of fact and conclusions of law and would show this Court the following:

1

# I.
## ISSUES PRESENTED

1. Applicant was denied due process by the trial court's consideration as an aggravating factor the Applicant's assertion of her right to counsel and right to remain silent when contacted by law enforcement prior to the filing of the instant charges as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and as guaranteed by Article I Section 10 and 19 of the Texas Constitution.

2. Applicant's right to effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution based on trial counsel's failure to investigate and present expert testimony concerning the Applicant's risk to the community and the unique nature of the circumstances of this offense based on the complainant and her family's relationship to the Applicant and her family.

3. Applicant's plea was involuntary based on trial counsel's failure to investigate and present mitigating evidence on her behalf.

## II.
## ARGUMENT AND AUTHORITIES
## IN SUPPORT OF ISSUE ONE

The trial court entered findings of fact and conclusion of law and recommended that relief be denied in this cause. This case presents the inherent problem with the Court's post conviction writ proceedings. Throughout the sentencing proceedings the trial court noted that Applicant was not forthcoming when approached by the police with the allegations. As noted in the writ of habeas corpus, the trial court questions trial counsel and criticized Applicant for the fact that she did not immediately confess.

The same court that commented on Applicant's silence at the time of contact by law enforcement determined that she has not established with proof by a preponderance of the evidence that her silence and failure to confess contributed to her punishment. The Court presiding at the sentencing was allowed to determine his own conduct and interpret the record.

Throughout its findings, the trial court minimized the importance of expert testimony and its own roll in determining the appropriate sentence.

During the sentencing hearing, the trial court repeatedly commented on the Applicant's failure to give a statement to law enforcement during the initial portions of the investigation. (RR 9 -10). The trial court criticized the defendant for not doing

3

the moral and legal thing by going to law enforcement and confessing. The trial court stated that the Applicant did not do the right thing by not telling the police about her criminal conduct. (RR 10). The trial court was repeatedly informed that she did not meet with the police based on advice of counsel. The trial court responded by stating:

> You've said it. She told the police she was going to give a statement. If you said that legal counsel urged her otherwise, that's okay. There is no harm in that. The point being, though that I want to address that th e police came to you, not because of you, but because of the child who gave you an opportunity to first and you didn't accept that. I don't know what you were thinking but his house of cards was going to fall ultimately.

(RR 13).

The trial court's comments concerning the aggravating nature of the Applicant's failure to confess to the police when contacted constitutes an express consideration of her Fifth Amendment right to remain silent based on the advice of counsel. When the Court was informed that she did not keep her appointment with the police to be questioned about an allegation of criminal conduct, the trial court expressly stated that she should have not followed her lawyer's advice and that to confess her criminal conduct was the moral thing to do and not follow advice of counsel. In *Salinas v. Texas*, 133 S. Ct. 2174 ( 2013), the Supreme Court again recognized that the privilege against self-incrimination "is an exception to the general principle that the Government has the right to everyone's testimony." *Garner v.*

4

*United States*, 424 U. S. 648, 658, n. 11, 96 S. Ct. 1178, 47 L. Ed. 2d 370 (1976).  To prevent the privilege from shielding information not properly within its scope, we have long held that a witness who "'desires the protection of the privilege . . . must claim it'" at the time he relies on it. *Murphy*, 465 U. S., at 427 (quoting *Monia*, 317 U. S., at 427, 63 S. Ct. 409, 87 L. Ed. 376).  *See also United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U. S. 103, 113, 47 S. Ct. 302, 71 L. Ed. 560 (1927); *Hoffman v. United States*, 341 U. S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).

The express invocation requirement also gives courts tasked with evaluating a Fifth Amendment claim a contemporaneous record establishing the witness' reasons for refusing to answer.  *See Roberts v. United States*, 445 U. S. 552, 560, n. 7 (1980) ("A witness may not employ the privilege to avoid giving testimony that he simply would prefer not to give"); *Hutcheson v. United States*, 369 U. S. 599, 610-611, 82 S. Ct. 1005, 8 L. Ed. 2d 137 (1962) (declining to treat invocation of due process as proper assertion of the privilege).

Normally, as pointed out by *Salinas,* a defendant normally does not invoke the privilege by remaining silent.  In *Roberts v. United States*, 445 U. S. 552 (1980), the Supreme Court  rejected the Fifth Amendment claim of a defendant who remained silent throughout a police investigation and received a harsher sentence for his failure

5

to cooperate. In ruling, the Court explained that "if [the defendant] believed that his failure to cooperate was privileged, he should have said so at a time when the sentencing court could have determined whether his claim was legitimate." *Id*., at 560. *See also United States v. Sullivan*, 274 U. S. 259, 263-264 (1927). A witness does not expressly invoke the privilege by standing mute.

Thus, in *Minnesota v. Murphy*, 465 U.S. 420 (1984), the Court held that the defendant's self-incriminating answers to his probation officer were properly admitted at trial because he failed to invoke the privilege. 465 U. S., at 427-428. In reaching that conclusion, the Supreme Court rejected the notion "that a witness must 'put the Government on notice by formally availing himself of the privilege' only when he alone 'is reasonably aware of the incriminating tendency of the questions.'" *Id*., at 428, (quoting *Roberts*, *supra*, at 562, Brennan, J., concurring)). *See also United States v. Kordel*, 397 U. S. 1, 7 (1970). The Fifth Amendment guarantees that no one may be "compelled in any criminal case to be a witness against himself"; it does not establish an unqualified "right to remain silent." A witness' constitutional right to refuse to answer questions depends on his reasons for doing so, and courts need to know those reasons to evaluate the merits of a Fifth Amendment claim.

In the instant case, despite knowing the Applicant's reasons for not confessing, this Court repeatedly criticized her, chastised her and placed moral blame for her

refusal to meet with the police and confess her criminal conduct. As evidence by Dr. Gripon's testimony this was a case that was not normal or ordinary. The Applicant is not a bad person. Applicant is a good person who did bad things and that cannot be viewed in a vacuum. The trial court's expressed consideration of her refusal to meet with the police and confess her crimes prior to the filing of any criminal charges violated the Fifth Amendment of the United States Constitution. The trial court missed the point and was able to reconstruct the proceedings to support his conclusion that she was not harmed. The trial court failed to address any of the legal authority presented that supports Applicant's claim for release.

### III.
### ARGUMENT AND AUTHORITIES
### IN SUPPORT OF ISSUE TWO AND THREE

Trial counsel admitted that he did not investigate the beneficial effect of expert testimony as a mitigating factor in this case. Trial counsel stated in his affidavit that the mitigating evidence was sufficient and an expert was not necessary. Only after a complete investigation can an attorney make a sound strategic decision. Only after reviewing the literature or communicating with an expert can an attorney that an expert is not needed to present or explain the dynamics of a fact pattern.

As evidence by the affidavits presented and Dr. Gripon's testimony, trial counsel's strategic decisions were made without investigation or research of the

science available that made a difference. The trial court stated that Dr. Gripon's testimony in retrospect would not have changed his opinion. Dr. Gripon's testimony clearly shows that Applicant was different from others and the situation presented herein was unique.

The relationship between Applicant and the complainant was unique. Trial counsel decided not to present that testimony. The importance of that testimony is evidence by the affidavits submitted detailing the relationship with the complainant and the problems that arose because of that relationship the families and how the constant gifts and presence of the complainant changed the family dynamics. Dr. Edward Gripon, a forensic psychiatrist stated that based on his review of the numerous records that his opinions are as follows:

1.    Leann Wallace does not fit any known profile of a sexual predator.

In fact, after reviewing this information, it is obvious that this conduct emerged from a very intense and intertwined relationship involving the members of the two families.

Apparently, the very close relationship between Leann Wallace and the victim, was encouraged by a number of parties and, unfortunately, developed a sexual component.

Leann Wallace continued to teach throughout the approximately 4 years, that this relationship is stated to have occurred and, during that time, she was not involved in any inappropriate manner with any other student/youth .

This would appear to clearly indicate that this lady is not a sexual predator but that the relationship itself, arising outside the school setting, evolved into the ultimate physical involvement between the two individuals.

2. The ultimate discovery/outcry in regard to this matter seems to have occurred sometime after the relationship ended and in close proximity to two separate factors.

One was the involvement of the victim in some type of group setting in which individuals were encouraged to "confess/state any past issues involving "guilt."

Equally of importance, it also seems to be approximate to the time , in which there was a distancing/dissolution of a friendship between the victim and Leann Wallace's youngest daughter.

3. It is assumed and stated in the trial transcript that the victim has suffered "physical and emotional" damage of an extreme level/nature because of this relationship.

Obviously, I've had no contact with the victim but I would state, based on clinical experience, that is an assumption that may not be based upon fact.

Historically, I've found clinically, that relationships involving intense feelings even if sexual in nature are frequently not "emotionally damaging" to the extent that many laypeople assume.

4. This relationship began as an intense personal involvement involving the two individuals and progressed to a relationship in which sexual activity was a part of the equation.

In my opinion, based on regional psychiatric probability, if the relationship had remained one of a classroom i.e. teacher/student relationship, then it would never have progressed to the point

9

of sexual involvement. There is significant evidence that the relationship "developed" based upon the extremely close and continued involvement of the two families and is reflective of significant psychodynamic interactions between the two groups.

5.  Leann Wallace does not pose a continued threat to the community in any predictable fashion.

6.  It is obvious, based on a review of this information and an interview Of Leann Wallace, that this relationship was a very intense and codependent relationship that, unfortunately, became sexual as well.

7.  In conclusion, although this involved a woman who was a teacher and a student, it is not based upon, in any fashion, a teacher/student relationship but, instead, is based upon an intense personal relationship, apparently encouraged by both families, that unfortunately crossed a significant boundary.

8.  Also, I would add that given the intense emotion apparently present between these two individuals, a severe sentence unilaterally imposed upon Leann Wallace may have significant negative implication, ultimately, upon the alleged victim.

Dr. Gripon's habeas testimony presented a complete picture of Applicant and separated Applicant from other sex offenders. He attempted to explain the circumstances of the offense. The trial court's findings reflect his own bias.

The Sixth Amendment to the Constitution of the United States guarantees the right to counsel. Moreover, the Supreme Court has stated that the right to counsel includes the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L. Ed.2d 763 (1970).

10

In order to provide effective assistance of counsel, an attorney must have a firm command of the operative facts and of the relevant law. As was stated by the Court of Criminal Appeals in *Jackson v. State*, 766 S.W.2d 504, 509 (Tex. Crim. App.1985):

> A criminal defense lawyer must have a firm command of the facts of the case <u>as well as governing law</u> before he can render reasonably effective assistance to his client. *Ex parte Lilly*, 656 S.W.2d 490 (Tex. Crim. App.1983); *Ex parte Ybarra*, 629 S.W.2d 943 (Tex. Crim. App.1982); *Ex parte Duffy*, 607 S.W.2d 507 (Tex. Crim. App. 1980). The responsibility of having a firm command of the facts of the case as well as governing law in order to assist and advise one criminally accused is not one placed on the State. *See Woolridge v. State*, 653 S.W.2d 811, n.7 (Tex. Crim. App. 1983).

(Emphasis in original). *See also Flores v. State*, 576 S.W.2d 632, 634 (Tex. Crim. App. 1978) (it is "fundamental that an attorney must acquaint himself not only with the law but also the facts of a case....").

In *Ex parte Briggs,* 187 S.W.3d 458 (Tex. Crim. App. 2005), the Court of Criminal Appeals was faced with a case where a decision to not call an expert was dependent on the financial condition of the defendant. The court determined that if an investigation of medical records to determine a child's cause of death is essential to the presentation of an effective defense, counsel cannot decline to conduct such an investigation based on his client's lack of financial resources. It relied on decisions by the Seventh Circuit in *Brown v. Sternes*, 304 F.3d 677, 693-98 (7th Cir. 2002)

11

(noting that "attorneys have an obligation to explore all readily available sources of evidence that might benefit their client[,]" and concluding that counsel who had access to defendant's medical records "had a professional obligation to do an in-depth investigation into their client's deep-seated psychiatric problems"; failure to do so was ineffective assistance of counsel); *see also Bouchillon v. Collins*, 907 F.2d 589, 595-97 (5th Cir. 1990) (trial attorney who failed to do any investigation into client's medical and mental history after he had been informed of prior hospitalizations and who may have persuaded client to plead guilty and accept plea offer was constitutionally ineffective for failing to make adequate investigation when it did not appear that defendant had any other available defense). The court ruled that if any reasonable attorney appointed to represent an indigent defendant would be expected to investigate and request expert assistance to determine a deceased infant's cause of death, a privately retained attorney should be held to no lower standard. The *Briggs* court stated:

> The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. . . . We see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers.

*Briggs*, 187 S.W.3d at 469 (quoting *Cuyler v. Sullivan*, 466 U.S. 335, 344, 100 S. Ct.

12

1708, 64 L. Ed. 2d 333 (1980). In *Wright v. State*, 223 S.W.3d 36 (Houston [1st Dist.] 2006, pet. ref'd), the First Court of Appeals applied *Briggs* counsel was ineffective because of his nonstrategic decision in failing to seek an expert's opinion.

Clearly, strategic choices made after a thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable under ineffective assistance of counsel claims. *Ex parte Kunkle*, 852 S.W.2d 499, 505 (Tex. Crim. App.), *cert. denied*, *Kunkle v. State*, 114 S.Ct. 122, 126 L.Ed.2d 87 (1993). However, strategic choices made after a less than complete investigation because the State withheld evidence undermined the Defendant right to the effective assistance of counsel.

In this case, trial counsel did not present any expert testimony that examined the risk that the Applicant posed to the community or attempt to explain the dynamics of the relationship between the Applicant and the complainant. The question that was never investigated or addressed by trial counsel was how a person like Applicant who provided so much help and guidance to so many cross the line and abuse a single child. The conduct as set out at the sentencing hearing demanded an explanation. Without an examination of the relationship from the outside looking inward, the Court was presented with only half the picture. The sentence imposed expressed a punishment based on the offense conduct a mitigating explanation. An expert could

13

have provided that explanation. Trial counsel failed to investigate nor present that explanation.

Based on the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), that she was denied effective assistance of counsel based on trial counsel's failure to obtain the assistance of an expert witness to assist in the preparation of a mitigation case for punishment. In order to "establish deficient performance, an accused must demonstrate that counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins v. Smith*, 539 U.S. 510, 521, 156 L. Ed. 2d 471, 123 S. Ct. 2527 (2003) (quoting *Strickland*, 466 U.S. at 688). Scrutiny of counsel's performance must be highly deferential, and we must presume that counsel's conduct falls within the wide range of reasonable professional assistance. *See Soffar v. Dretke*, 368 F.3d 441, 471 (5th Cir. 2004). Reviewing courts must make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). To this end, a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Johnson v. Dretke*, 394

14

F.3d 332, 337 (5th Cir. 2004).

"[S]strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins*, 539 U.S. at 521 (internal quotation marks and alteration omitted) (quoting *Strickland*, 668 U.S. at 690-91). When assessing the reasonableness of an attorney's investigation, we must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* at 527. To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Even an experienced lawyer needs the assistance of an expert to prepare a case for trial that has unusual fact or there are circumstances that need to be explained. *See Wiggins*, 539 U.S. at 536 (finding that counsel is not in a position to "make a reasonable strategic choice" when his "investigation supporting [that] choice was unreasonable"); *Bouchillon v. Collins*, 907 F.2d 589, 597 (5th Cir. 1990) ("Tactical decisions must be made in the context of a reasonable amount of investigation, not in a vacuum."); *Profitt v. Waldron*, 831 F.2d 1245, 1249 (5th Cir. 1987) (finding that

15

"our usual deference to tactical decisions is not relevant" when the decisions are based on "information that was faulty because of [ ] ineffective investigatory steps").

Thus, without conducting an investigation as to the psychological basis for her conduct, trial counsel could not properly advise Petitioner to enter a plea of guilty to the offense contained in the indictment. *McMann v. Richardson,* 397 U.S. 759 (1970) *Tollet v. Henderson,* 411 U.S. 258 (1973); *Henderson v. Morgan,* 426 U.S. 63& (1976): *Hill v. Lockhart,* 474 U..S. 52 (1985). In this case, trial counsel made a decision that included not to present evidence that explained the relationship between the families and failed to consult with an expert to explain Applicant's mental state. The testimony of the expert and Applicant's family would have explained her conduct and her relationship to the complainant and would have tended to mitigate the punishment assessed. Thus, at the very least, Applicant is entitled to a new punishment hearing where the testimony of an expert can be presented.

WHEREFORE, PREMISES CONSIDERED, Applicant prays that this Court recommend that the Court of Criminal Appeals grant her requested relief and grant her a new punishment hearing and any other relief for which she may be entitled.

16

Respectfully submitted,

Schneider & McKinney, P.C.

/s/ Stanley G. Schneider
Stanley G. Schneider
Texas Bar  No. 17790500
440 Louisiana
Suite 800
Houston, Texas 77002
Office: (713) 951-9994
Fax: (713) 224-6008
E-mail: stans3112@aol.com

ATTORNEY FOR APPLICANT
LEANN WALLACE

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the attached and foregoing Applicant's Objections to the Trial Court's Finding of Fact and Conclusions of Law has been mailed and/or hand delivered on the Appellate Section of the Jefferson County District Attorney's Office, 1001 Pearl Street, Beaumont, Texas 77701 and the State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711 on this the 28th day of April, 2015.

/s/ Stanley G. Schneider
Stanley G. Schneider